**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenny CONWAY, Defendant–Appellant.**

**No. 96–30169.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1997.

Decided Aug. 29, 1997.

Ruben L. Iniguez, Assistant Federal Public Defender, Spokane, WA, for Defendant–Appellant.

Ronald W. Skibbie, Assistant United States Attorney, Spokane, WA, for Plaintiff–Appellee.

Before: WRIGHT, WALLACE, and HAWKINS, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Kenny Conway appeals from the denial of his motion to suppress evidence gathered during a search of his residence by state probation officers. At the time of the search, Conway was on community supervision pursuant to a state court conviction. His supervising officer, Gheorghe Turcin, suspected that he was not living at his reported address, in violation of the conditions of his community supervision.

Turcin determined that Conway was living at an unreported residence and accompanied him there after a scheduled meeting. A search of a shoebox in Conway's bedroom revealed a firearm. Conway was charged with one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). His conditional guilty plea preserved his challenge to the search. Fed.R.Crim.P. 11(a)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

■ A probation search is permissible if conducted pursuant to a state law that satisfies the Fourth Amendment's reasonableness standard. *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *see also United States v. Garcia–Cruz*, 978 F.2d 537, 541 (9th Cir.1992); *United States v. Watts*, 67 F.3d 790, 793–94 (9th Cir.1995), *overruled on other grounds*, —— U.S. ——,

117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *United States v. Wryn*, 952 F.2d 1122, 1124 (9th Cir.1991). The Fourth Amendment's reasonableness standard balances the special law enforcement needs supporting the state law scheme against the probationer's privacy interests.

■ Wisconsin's scheme met this test in *Griffin* because it required "reasonable grounds" to support a search. *Id.* at 870–71, 107 S.Ct. at 3166. Similarly, under Washington law, "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, an offender may be required to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." RCW § 9.94A.195. Washington's Court of Appeals has defined "reasonable cause" as "a well-founded suspicion that a violation has occurred." *State v. Massey*, 81 Wash.App. 198, 913 P.2d 424, 425 (1996).

The Washington statute's similarity to Wisconsin's dictates the result. It promotes the goal of rehabilitation, *see Griffin*, 483 U.S. at 868, 107 S.Ct. at 3165 (citing studies showing that close supervision reduces recidivism); *Latta v. Fitzharris*, 521 F.2d 246, 249 (9th Cir.1975)(en banc)("The overriding goal of the parole system is to give the parolee a chance to further and to demonstrate his rehabilitation while serving a part of his sentence outside the prison walls."), and it enhances community safety by permitting the rapid detection of contraband and criminal activity. On the other hand, offenders enjoy a reduced expectation of privacy while on supervised release, *see Griffin*, 483 U.S. at 874, 107 S.Ct. at 3168 which the law protects by requiring reasonable grounds for a search.

## II

■ Before conducting the search, Turcin had a well-founded suspicion that Conway had violated a condition of his release by failing to disclose his current address. Turcin had been to the reported address on 21 occasions, but had found Conway there only once. Conway argues that Turcin should not have expected to find him home during day-

light hours, but Conway was unemployed. When asked if any of Conway's possessions were at the reported address, the home-owner could identify only a pair of socks.

Turcin also had a well-founded suspicion that Conway actually lived at 1930 West College, the address searched. A confidential informant told Turcin that a man who met Conway's description and who went by the name "Arab," Conway's known street monik-er, often walked his dog at night outside the 1930 West College address. Turcin discover-ed independently that Conway had a dog. Police observed Conway leaving the 1930 West College home at 8:45 am. When Tur-cin told Conway that he wanted to go to 1930 West College, Conway said that "his" dog was there and would attack anyone who en-tered. At the residence, Conway opened the front door with his own keys. Turcin ob-served mail and notes addressed to Conway; Conway identified a bedroom in the house as "his," and Turcin saw clothes in the bedroom that Conway had worn on visits to Turcin's office.

While at 1930 West College, Turcin devel-oped a well-founded suspicion that Conway might be guilty of other violations. The home is in a neighborhood known for gang activity; Conway previously had been in a gang, and local police had reported to Turcin that they believed Conway was again associ-ating with it; offenders commonly use unre-ported addresses to conduct criminal activi-ties without arousing the suspicions of their community corrections officers; shoeboxes are commonly used to store drugs and fire-arms; Conway had already violated his com-munity supervision four times: three times by possessing PCP and once by absconding from supervision.

Because Turcin had reasonable grounds to suspect that Conway had violated the terms of his release, the search was valid under Washington law. It does not matter whether the community corrections officers believed they would find evidence of Conway's ad-dress or contraband when they opened the shoeboxes. Washington law does not require that the search be necessary to confirm the suspicion of impermissible activity, or that it cease once the suspicion has been confirmed.

## III

Conway argues that the search violated Washington's regulatory scheme in several respects. He did not present these argu-ments to the trial court.

To the extent that they are not waived, they lack merit. The departmental directive on which Conway relies does not say what he asserts. It does not require a supervisor's permission, third party consent to search shared quarters, or suspicion of a major vio-lation.

Further, his arguments lack a factual ba-sis. He failed to present evidence that Tur-cin lacked permission or that a third party shared the bedroom, and we suspect that possession of contraband is a major violation.

**AFFIRMED.**

WALLACE, Circuit Judge, concurring in the result:

I concur only in the result of the majority.

## I

Our precedent on the Fourth Amendment standards governing state probation searches is in considerable disarray. One issue should be and is clear: federal law, and only federal law, governs the admissibility of evidence in federal court, even if that evidence was gath-ered by state officials. *United States v. Bra-dy*, 993 F.2d 177, 179 (9th Cir.1993); *United States v. Chavez–Vernaza*, 844 F.2d 1368, 1373–74 (9th Cir.1987). However, an excep-tion seems to have developed. In the limited context of state parole or probation searches, we may sometimes look to state law for guidance about the controlling federal issue. Thus, we have said that "[a] parole search is proper if conducted in a manner consistent with state law." *United States v. Garcia–Cruz*, 978 F.2d 537, 541 (9th Cir.1992), *cert. denied*, 508 U.S. 955, 113 S.Ct. 2453, 124 L.Ed.2d 669 (1993); *see also United States v. Watts*, 67 F.3d 790, 793 (9th Cir.1995) (*Watts*) ("[P]robation searches conducted pursuant to state law satisfy the Fourth Amendment's reasonableness requirement."), *overruled on other grounds*, —— U.S. ——,

117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *United States v. Wryn,* 952 F.2d 1122, 1124 (9th Cir.1991) (*Wryn*) ("[H]ad the warrantless search of the probationer Wryn's home been authorized by either Montana state law or by Wryn's probation agreement we would consider the search 'reasonable' under the fourth amendment.").

We must, of course, receive our primary guidance from the United States Supreme Court. Its decision in *Griffin v. Wisconsin,* 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (*Griffin*), sheds much light on the issues before us. In *Griffin,* the Court characterized the Wisconsin Supreme Court's holding as follows: "any search of a probationer's home by a probation officer satisfies the Fourth Amendment as long as the information possessed by the officer satisfies a federal 'reasonable grounds' standard." *Id.* at 872, 107 S.Ct. at 3167. The Supreme Court affirmed but "f[ound] it unnecessary to embrace [that] new principle of law." *Id.* Instead, the Court held that the search "satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement." *Id.* at 873, 107 S.Ct. at 3167. The Wisconsin regulation at issue "permit[ted] any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." *Id.* at 870–71, 107 S.Ct. at 3166–67.

Washington has a similar regulatory structure. Washington Revised Code § 9.94A.195 provides that "[i]f there is reasonable cause to believe that an offender has violated a condition or requirement of the sentence, an offender may be required to submit to a search and seizure of the offender's person, residence, automobile, or other personal property." The Washington courts have not further defined "reasonable cause," as used in that statute. The Washington Department of Corrections has promulgated a regulation, DIR 904–F, which purports to define the cause necessary to justify a search as "[r]eliable information which would cause an officer to believe that the offender is in possession of evidence that shows a serious violation/infraction has occurred or a sentence requirement has been violated."

I need not decide whether the Washington courts would accept the Department's definition. Conway's probation officers had probable cause to search his residence at 1930 West College. I am confident that Washington Revised Code § 9.94A.195, however interpreted, requires no more than that.

II

This case presents an additional problem in the interaction between state and federal law. *Griffin* holds that state probation officers may search the known residence of a probationer upon reasonable grounds if state law so provides. One can read *Griffin* as not squarely resolving what standard applies when there is doubt about the probationer's residence. Our precedents on this issue, unfortunately, are inconsistent. In *United States v. Harper,* 928 F.2d 894, 896 (9th Cir.1991) (*Harper*), we held that a probation search was lawful because the officers had probable cause to believe that the probationer lived at the searched residence. But in *United States v. Dally,* 606 F.2d 861, 863 (9th Cir.1979), we held that a "reasonable belief" that the parolee had moved to the residence in question provided a "reasonable basis" for the parole search. *See also United States v. Davis,* 932 F.2d 752, 758–60 (9th Cir.1991) (item may be searched if there is "reasonable suspicion" that it is within the ownership, possession, or control of the probationer); *Harper,* 928 F.2d at 896 (citing *Dally* with approval); *Watts,* 67 F.3d at 795 (recognizing "some tension" between *Harper* and *Dally*).

Focusing on this last issue, Conway argues that the facts available to the officers did not justify either probable cause or a "reasonable basis" that he lived at the West College house. He also contends that the officers had no justification for continuing to search after his residence at that address was clearly established. Finally, Conway argues that the search violated state regulations because failure to report a change of address is merely a "technical" violation of probation rules, because Turcin failed to obtain supervisory approval before searching, and because the officers searched the "personal living space"

of another occupant without that person's consent. *See* DIR 904–F. I will address these contentions in turn.

## A.

The district court held that Turcin had probable cause to believe that Conway was living at 1930 West College. We review de novo a district court's determination that probable cause exists in a particular case. *Ornelas v. United States,* — U.S. —, —, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996). Because I agree with the district court that the officers had probable cause, I need not resolve the apparent conflict between *Harper*'s probable cause standard and *Dally*'s reasonableness standard. *See Watts,* 67 F.3d at 795–96.

## B.

Even if the entry passes constitutional scrutiny, Conway suggests that the officers conclusively established his residence at 1930 West College before, or shortly after, entering that house. He argues that the search of his bedroom was therefore unnecessary, and must have been "conducted for the purpose of finding evidence of other suspected wrongdoing." If so, he contends, "independent cause to search for that purpose was required."

Conway's argument is intriguing, but it fails for three separate reasons. First, I am aware of no principle of law which requires an officer to terminate a valid search as soon as some evidence of a crime is uncovered. The scope of a search is limited by the evidence which justifies it; if officers have a sufficient basis to believe that they will find evidence of a probation violation in a particular place, they may search it. I would not ask law enforcement officers to cease searching when, in their estimation, they have gathered "enough" evidence to prove the offense.

Second, the Supreme Court recently held that the subjective motivations of searching officers have no place in Fourth Amendment analysis. *See Whren v. United States,* — U.S. —, —, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996). Even if Westensee's search of the bedroom was motivated by a desire to uncover evidence of a different offense, the search was objectively justified because Conway lied about his residence. That ends my inquiry; after the Supreme Court's decision in *Whren,* the Fourth Amendment does not condemn "pretextual" searches.

Finally, even if the officers needed an independent foundation of other wrongdoing to search the bedroom, they had it. As the district court held, the state probation officers

> knew the defendant had been convicted of conspiracy to distribute cocaine. They knew he had admitted prior involvement in a gang. They knew he had possessed PCP on three occasions during February and March, 1995. They knew he had absconded from supervision for an extended period. They knew he had been seen by Spokane Police Officers frequently [sic] houses associated with gang activity. They knew he had lied to his community corrections officer about his residence. . . . In some cases an offender's failure to disclose a change of address is nothing more than a technical violation. In other cases, however, it is a tactic used to conceal continuing criminal conduct.

I agree with the district court that, under the circumstances of this case, Conway's repeated and deliberate falsehoods about his residence created probable cause that he was concealing evidence of criminal activity at the West College house. *See Watts,* 67 F.3d at 792 ("[The officer] was well aware that some probationers would lie to their probation officers about where they were living so they could continue to engage in criminal activity without being hindered by probation searches.").

## C.

Finally, Conway contends that the officers violated the Fourth Amendment because they did not comply with the state administrative regulation governing probation searches. While a troubling inconsistency exists between our circuit's precedent and *Griffin,* I need not attempt to resolve this conflict because Conway's state law arguments are either meritless or waived.

Division Directive DIR 904–F defines the standard required for a probation search as "[r]eliable information which would cause an officer to believe that the offender is in possession of evidence that shows a serious violation/infraction has occurred or a sentence requirement has been violated." Conway argues that failure to report a change of address is merely a "technical violation" of probation conditions, and does not rise to the level of the "serious violation/infraction" that DIR 904–F requires.

I cannot accept that characterization. Conway did not merely fail to report a change of address; he systematically lied to his probation officer about his living situation for nearly a year. I believe that the Washington courts would consider that a "serious" infraction. In the context of his criminal history and pattern of probation violations, Conway's pattern of deceit constitutes "reliable information" that he was involved in some more serious criminal behavior. Even if this were not so, Conway's argument overlooks the second half of DIR 904–F's disjunctive authorization. That rule permits searches when officers possess reliable information suggesting either "a serious violation/infraction" *or* that "a sentence requirement has been violated." Submitting to probation supervision was a requirement of Conway's sentence, and concealing his true address violated that requirement.

DIR 904–F also provides that state probation officers "are to obtain permission from their supervisors prior to conducting a planned search," and "are not to search personal living space of other occupants without the other occupants' consent." Conway argues on appeal that Turcin failed to obtain supervisory approval for the search, and that the West College bedroom was the "personal living space" of his girlfriend who did not consent to the search. He contends that the search therefore violated state law and, by extension, the Fourth Amendment.

In *Griffin*, the Supreme Court squarely rejected a very similar argument.

> The dissenters assert that the search did not comport with all the governing Wisconsin regulations. There are reasonable

grounds on which the Wisconsin court could find that it did. But we need not belabor those here, since the only regulation upon which we rely for our constitutional decision is that which permits a warrantless search on "reasonable grounds." The Wisconsin Supreme Court found the requirement of "reasonable grounds" to have been met on the facts of this case and, as discussed earlier, we hold that such a requirement, so interpreted, meets constitutional minimum standards as well. That the procedures followed, although establishing "reasonable grounds" under Wisconsin law, and adequate under federal constitutional standards, may have violated Wisconsin state regulations, is irrelevant to the case before us.

*Griffin*, 483 U.S. at 880 n. 8, 107 S.Ct. at 3172 n. 8. As discussed earlier, "reasonable grounds" supported Turcin's search of the West College home. The fact that this search may have violated other state regulations "is irrelevant to the case before us." *Id.*

Nonetheless, we have held at least once that evidence should be suppressed because a state regulation, unrelated to the definition of "reasonable cause," was violated. In *Wryn*, we held that

> Montana Department of Institutions administrative rule 20.7.1101(7) provides that, while on probation, a probationer, shall submit to a search . . . *"if so ordered by the sentencing court."* (emphasis added). This state regulation extends to a probationer the right under the fourth amendment to be free from a warrantless search of his residence unless such a search is authorized by the sentencing court. The search of Wryn's residence was not so authorized, and thus it violated the Constitution.

*Wryn*, 952 F.2d at 1125 (citations omitted). Under *Wryn*, DIR 904–F would extend to Washington probationers a similar federal Fourth Amendment right to be "free from" any search that violates that directive's laundry list of requirements. But the Supreme Court's instruction in *Griffin* is that state regulations are "irrelevant" except to the

extent that they define "reasonable grounds" to search under state law.

Fortunately, I need not try to solve that conflict. After studying the record, I conclude that these state law contentions are either meritless or waived. Conway never argued before the district court that the search was invalid because Turcin lacked supervisory approval. He never developed the facts necessary to support such a contention, nor did he ask the district court for a finding on this issue. Conway's counsel commented briefly during argument that "CCO's are to obtain permission from their supervisors, prior to conducting a planned search. There's a caveat, advance approval is not required when evidence of a violation [is] observed by a CCO in the course of normal business." But he never developed the argument, questioned any witness about it, or even alleged that such approval was absent in this case. As a result, the district court did not make any findings on this issue or address it in its order. I recognize that the government has the burden of proving compliance with state law at a suppression hearing. The district court can presume compliance with state law by state officials. *Red Top Mercury Mines, Inc. v. United States,* 887 F.2d 198, 202–03 (9th Cir.1989). If the defendant disagrees, the defendant must identify the defects complained of with sufficient particularity for the district court to conduct the appropriate fact-finding and make an informed decision. Because Conway did not adequately raise this issue, I cannot determine from the record whether it has any factual merit. It is waived.

Conway did argue before the district court that Turcin violated DIR 904–F by searching the "personal living space" of another occupant without that occupant's consent, but provided no evidence supporting the argument. Even if he had, I do not believe that the Washington courts would interpret that provision to include "personal living space" shared by a probationer. The directive permits searches of "common areas" as long as "the offender uses the areas on a regular basis." Conway acknowledged that he was living in the bedroom, and CCO Westensee found many of his personal effects there. DIR 904–F does not permit probationers to immunize their bedrooms from search simply by sharing them with another person.

Because Conway's state law arguments are either meritless or waived on appeal, I need not confront the *Griffin/Wryn* problem and need not decide whether a violation of DIR 904–F would require the suppression of evidence in federal court.

Therefore, I concur in the result reached by the majority.