2004-NMCA-049

90 P.3d 509

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Noel BACA, Jr., Defendant–Appellant.**

**No. 23,429.**

Court of Appeals of New Mexico.

March 1, 2004.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Edmund J. Lang, Albuquerque, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant appeals the denial of his motion to suppress evidence obtained after a warrantless probation search and leading to his plea of no contest to the charge of trafficking by possession with intent to distribute cocaine. We affirm.

## BACKGROUND

{2} In 1999 Defendant Noel Baca, Jr. pled guilty to one count of petty misdemeanor assault (attempted battery), in violation of NMSA 1978, § 30–3–1(A) (1963), in *State v. Noel Baca, Jr.*, Second Judicial District Court, No. CRCR–99–00400. He was placed on supervised probation for six months pursuant to a judgment, sentence, and order deferring sentence (deferred sentence). The deferred sentence specifically stated "Defendant is ordered to be placed on supervised probation for six (6) months on condition that Defendant obey all rules, regulations and orders of the Probation Authorities," and that "[t]he terms and conditions of probation are made terms and conditions of the deferred sentence."

{3} The order of probation specifically enumerated the terms of probation that a person under supervised probation must acknowledge. The order prohibited the possession and distribution of unlawful drugs and the possession of firearms, and also included the following terms:

1. You will not violate any of the laws or ordinances of the State of New Mexico, or any other jurisdiction, and you shall not endanger the person or property of another.

6. You will permit any Probation Officer to visit you at your home or place of employment at any time and you will permit [a] warrantless search, by a Probation Officer, of your person, automobile, residence, property and/or living quarters if he/she has *reasonable cause to believe* that such a search will produce evidence of a violation of your conditions of probation.

(Emphasis added.) The order of probation was signed by Defendant, his probation officer, and the sentencing judge on May 15, 2000. Above Defendant's signature, the order read "I have read and understand the terms of this Probation Order and will abide by its terms."

{4} About three months later, Defendant's probation officer, Stacy Kunkle, received a tip from a confidential source that Defendant was selling drugs from his home. Kunkle testified she had known the confidential source for one or two months and that the source was not paid, on probation, or subject to charges. Kunkle notified an investigator from the probation department, Carl Cleland, concerning the information within seven to ten days from receiving the tip. Cleland then conducted an investigation into the allegations against Defendant.

{5} Cleland concluded from his investigation that Defendant was living above his economic means. Cleland learned that Defendant worked for the City of Albuquerque Solid Waste Department and earned approximately $2000 per month and that Defendant's wife earned approximately the same amount. Cleland found that Defendant had five vehicles registered to him including two Harley Davidson motorcycles both paid in full, a 1998 GMC truck with a lien, a 1992 Ford Ranger with a lien, and his wife's 1996 Honda Accord with a one-year lien. Cleland also learned that Defendant had one child attending private school and that he had taken a trip to Aruba in June 2000. Finally, Cleland also obtained information that Defendant had expensive leather furniture, computers, and electronic equipment. Cleland did not determine if someone else paid the tuition for Defendant's child or the trip to Aruba, nor did he check the amount of the

monthly payments for the vehicles. Cleland conducted surveillance on Defendant's house at least five times without detecting any suspicious activity. However, Cleland believed he had "reasonable suspicion" to investigate further whether Defendant "was possibly in violation of his probation by trafficking narcotics" based on the totality of circumstances. Cleland therefore concluded he needed to conduct a warrantless probation search for evidence of drugs and/or trafficking.

{6} Accompanied by two Albuquerque Police Department detectives, Cleland and his partner arrived at Defendant's home to conduct a warrantless probation search. Defendant was not home and his teenage son answered the door. Defendant's son allowed the probation officers and detectives to enter the home, and they then requested him to call his father. After ensuring no one else was in the residence, as directed by Cleland, one of the detectives reported seeing a gun safe in the bedroom. The gun safe aroused Cleland's suspicion because Defendant was not allowed to have firearms in his possession as a condition of his probation. The detectives conducted no further search of the home, at this time, other than the original sweep to assure no one else was present. Defendant arrived at the house approximately fifteen to twenty minutes later. Cleland then notified Defendant that the probation officers had "reasonable cause to come and talk to him and look through his place for possible violations of probation" and asked Defendant to open the gun safe. Cleland testified that Defendant became very nervous upon the request to open the safe. Defendant eventually opened the safe which contained a small amount of marijuana and approximately $18,000 in cash. Defendant was read his rights, informed of the information leading the probation officers to believe he was violating the terms of his probation by selling drugs, and was asked if he had any other drugs in the house. Defendant paused for several seconds and finally responded, "[i]f there are any drugs, I don't know about them."

{7} Cleland informed one of the detectives about the confidential tip, the items found in the safe, and the fact Cleland believed "we definitely have a probation violation at this point because he had marijuana in the safe." After Cleland consulted with his supervisor he decided to "talk to the detectives ... and see what they want[ed] to do." At this point the probation officers and detectives had ceased searching Defendant's home. The detectives obtained a search warrant based on the items found in the safe, the information that led to the warrantless probation search, and Defendant's behavior during the warrantless probation search. Further search of the house led to the discovery of cocaine and additional United States currency, for a total of $19,510.

{8} Defendant was charged with trafficking by possession with intent to distribute cocaine in violation of NMSA 1978, § 30–31–20(A)(3) (1990), and with possession of marijuana with intent to distribute in violation of NMSA 1978, § 30–31–22(A)(1) (1990). Also, a forfeiture complaint for $19,510 in United States currency seized from Defendant's home was filed in the Second Judicial District Court, No. CV–2000–09717. The criminal and forfeiture cases were consolidated.

{9} Defendant filed a motion to suppress the evidence obtained from the warrantless probation search and subsequent warrant search. The district court denied Defendant's motion to suppress. Reserving the right to appeal the district court's denial of his motion to suppress, Defendant pled no contest to the charge of trafficking by possession with intent to distribute cocaine. The possession with intent to distribute marijuana charge was dismissed. Defendant waived any interest in the currency which was the subject of the forfeiture action.

{10} On appeal, Defendant asserts (1) the warrantless search (a) was unlawful because the purported probation condition violations on which the officers acted to conduct the search were not reasonably related to his rehabilitation in connection with his misdemeanor assault conviction, and (b) violated the New Mexico Constitution because probable cause plus exigent circumstances were required but absent for the warrantless search; (2) the lower standard of reasonable suspicion for a warrantless probation search, if applicable, was not met with a threshold of

substantial evidence; and (3) the warrantless probation search was invalid as a subterfuge for an investigation.

## DISCUSSION

### Standard of Review

{11} The legality of a search questioned in a suppression hearing is generally tested as a mixed question of law and fact wherein we review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo. *State v. Reynolds,* 119 N.M. 383, 384, 890 P.2d 1315, 1316 (1995); *State v. Werner,* 117 N.M. 315, 316–17, 871 P.2d 971, 972–73 (1994); *State v. Attaway,* 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994). In reviewing the application of law to facts, we view the facts in a manner most favorable to the prevailing party. *State v. Jason L.,* 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856; *State v. Boeglin,* 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.1983).

{12} The rules and exceptions that "flourish in the jurisprudence of search and seizure are often no more than factual manifestations of the constitutional requirement that searches and seizures be reasonable." *Attaway,* 117 N.M. at 145, 870 P.2d at 107. The rules and the tests they contain are "based ... on careful balancing of the underlying constitutional values," and "each is a proxy for reasonableness, generally applicable, but inherently factual." *Id.* Thus, we must "shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context," and where the mixed question involved "lies closest in proximity to a conclusion of law, ... [the] determination[ ][is] to be reviewed de novo." *Id.* at 145–46, 870 P.2d at 107–08.

{13} We review whether a court's imposition of a condition of probation is lawful under an abuse of discretion standard. *See State v. Donaldson,* 100 N.M. 111, 119–20, 666 P.2d 1258, 1266–67 (Ct.App.1983) (stating that the district court has broad discretion in imposing probation and "the court's discretion will not be set aside on review unless the terms and conditions of probation (1) have no reasonable relationship to the offense for which defendant was convicted, (2) relate to activity which is not itself criminal in nature[,] *and* (3) require or forbid conduct which is not reasonably related to deterring future criminality"); *see also State v. McCoy,* 116 N.M. 491, 499–500, 864 P.2d 307, 315–16 (Ct.App.1993) (holding that probationer failed to satisfy two of the three prongs of the *Donaldson* test for determining if a probation condition was reasonably related to the probationer's rehabilitation and that the district court did not abuse its discretion in imposing random urinalysis as a condition of probation), *rev'd on other grounds sub nom. State v. Hodge,* 118 N.M. 410, 882 P.2d 1 (1994).

### Constitutional Validity of Probation Conditions and Warrantless Probation Search

{14} Defendant contends (1) that the drug-related probation condition the probation officers suspected was violated was not reasonably related to his misdemeanor assault conviction and to his rehabilitation, and (2) that our State Constitution should be interpreted to require probable cause plus exigent circumstances, or at the very least, reasonable suspicion with exigent circumstances, for any warrantless probation-related search of his home.

### 1. Reasonable Relationship of Condition of Probation to Rehabilitation

{15} Defendant seeks constitutional protection against the warrantless search, asserting that the conditions of probation authorizing a warrantless search and prohibiting possession of drugs were not reasonably related to his rehabilitation in connection with his underlying offense of a misdemeanor assault. *See State v. Gallagher,* 100 N.M. 697, 699, 675 P.2d 429, 431 (Ct.App.1984) (holding that warrantless search as probation condition was a valid limitation to the defendant's Fourth Amendment rights when defendant asserted the condition was not reasonably related to rehabilitation); *State v. Gardner,* 95 N.M. 171, 174, 619 P.2d 847, 850 (Ct.App. 1980) (analyzing whether special conditions of probation, namely, a prohibition against drug use, submission to urine samples

upon request, and submission to searches upon request, were reasonably related to rehabilitation).

{16} Below, Defendant had the burden to come forward with evidence sufficient to raise a prima facie defense of lack of a reasonable relationship in order to test the legality of the search. *See In re Alberto L.*, 2002–NMCA–107, ¶ 10, 133 N.M. 1, 57 P.3d 555 ("A defendant has [the] burden of coming forward with evidence sufficient to raise an issue as to the illegal search and seizure claimed." (internal quotation marks and citation omitted)). On appeal, Defendant must persuade us that the first trial court abused its discretion in imposing the search, gun, and drug-related conditions of probation, or that the second trial court erred by holding that a reasonable relationship existed between Defendant's assault conviction and his conditions of probation. *See McCoy*, 116 N.M. at 499–500, 864 P.2d at 315–16 (holding that probationer failed to satisfy the *Donaldson* test for determining if a probation condition is not reasonably related to the probationer's rehabilitation and therefore the trial court did not abuse its discretion in imposing random urinalysis as a condition of probation).

{17} A New Mexico district court has statutory authority to place a convicted defendant on supervised probation. NMSA 1978, § 31–20–6(C) (1997). Probation is " 'a form of criminal sanction' "; it is " 'one point [ ] on a continuum of possible punishments.' " *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). "[A] court … may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Id.* at 119, 122 S.Ct. 587.

{18} If the court orders probation, the court shall "attach to its order … suspending sentence such reasonable conditions as it may deem necessary to ensure that the defendant will observe the laws of the United States and the various states and the ordinances of any municipality." § 31–20–6. The court may require that a person on probation "satisfy any other conditions reasonably re-

lated to his rehabilitation." § 31–20–6(F). "To be reasonably related, the probation condition must be relevant to the offense for which probation was granted." *Gardner*, 95 N.M. at 174, 619 P.2d at 850.

{19} Defendant fails to set out on appeal any evidence presented at trial to prove the lack of a reasonable relationship. We find no evidence in the record bearing on the relationships between the assault conviction and the conditions prohibiting him from possessing drugs or firearms. For example, we find no evidence of the facts surrounding Defendant's conduct relating to the assault offense. Nor is there any evidence showing whether Defendant engaged in prior criminal conduct that would cause a court to impose particular conditions. Defendant presents no factual basis or argument to persuade us why a condition prohibiting use or trafficking in drugs or possession of weapons is not reasonably related to his rehabilitation. Defendant's contention fails due to his own lack of proof. *See People v. Bauer*, 211 Cal.App.3d 937, 260 Cal.Rptr. 62, 65–66 (1989) (determining there existed a nexus between the underlying crimes and the condition to abstain from drugs in case involving warrantless probation search following convictions for false imprisonment and simple assault); *State v. Josephson*, 125 Idaho 119, 867 P.2d 993, 996–97 (Idaho Ct.App.1993) (determining distinction between misdemeanor and felony to be irrelevant in considering validity of warrantless search condition on probationer with misdemeanor assault convictions). The mere fact of conviction on a plea of guilty, with no other evidence regarding Defendant, the offense, and any criminal history, is insufficient to make the case that the possession and search conditions are not reasonably related to Defendant's rehabilitation in connection with the underlying offense. The district court specifically determined that:

> The warrantless probation search condition in this case clearly is related to enforcement of probation terms … that the probationer obey all laws, not possess firearms, not possess, or distribute controlled substances. Enforcing those terms is reasonably related to rehabilitation of the Defendant and protection of the public.

It would not be reasonable for this Court to conclude that drugs, guns and violence, such as assault, are not reasonably related to each other. It would further be unreasonable for this Court to declare that a probation term prohibiting the Defendant from possessing drugs and weapons would not reasonably relate to his rehabilitation, and/or protection of the public.

On the evidence presented, the first trial court did not err in imposing the possession and search probation conditions, and the second trial court did not err by determining that the conditions were reasonably related to Defendant's rehabilitation in connection with his misdemeanor assault offense.

## 2. The Validity of Warrantless Probation Search Based on Reasonable Cause or Suspicion

{20} Defendant seeks constitutional protection against the warrantless search on the ground that a warrantless search must be based on probable cause and exigent circumstances, or at a minimum reasonable suspicion and exigent circumstances. Otherwise, Defendant contends, the search is unreasonable and thus constitutionally insufficient under Article II, Section 10 of the New Mexico Constitution.

### a. The Fourth Amendment and Probation

{21} The Fourth Amendment's " 'central requirement' is one of reasonableness." *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); *see also Knights*, 534 U.S. at 118, 122 S.Ct. 587 ("The touchstone of the Fourth Amendment is reasonableness."). In order to protect privacy interests under the Fourth Amendment, the United States Supreme Court has established rules that "[s]ometimes ... require warrants." *McArthur*, 531 U.S. at 330, 121 S.Ct. 946. Normally, the search of a home is only reasonable for Fourth Amendment purposes if it is conducted pursuant to a warrant grounded in probable cause. *Payton v. New York*, 445 U.S. 573, 585, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

{22} However, there exist exceptions to the warrant requirement: "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *McArthur*, 531 U.S. at 330, 121 S.Ct. 946; *see also State v. Nemeth*, 2001–NMCA–029, ¶¶ 31–41, 130 N.M. 261, 23 P.3d 936 (discussing this Court's concern about intrusion into the privacy and sanctity of the home without a warrant, and holding that under limited circumstances, allowing appropriate application of the community caretaker doctrine, an entry without a warrant issue based on probable cause showing is permissible); *In re Josue T.*, 1999–NMCA–115, ¶ 15, 128 N.M. 56, 989 P.2d 431 (stating that "[t]he reasonableness of a particular search is usually gauged by whether the state actor had probable cause and a search warrant," but recognizing that there exist instances, such as "special needs" as discussed in *Griffin*, 483 U.S. at 873, 107 S.Ct. 3164, and the warrantless search of students by school officials as discussed in *New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), and in *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), permitting school officials to dispense with both probable cause and a warrant).

{23} The search of a probationer's home, as well, must be reasonable under the Fourth Amendment. *Griffin*, 483 U.S. at 873, 107 S.Ct. 3164. Yet "[t]o a greater or lesser degree, it is always true of probationers ... that they do not enjoy the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions." *Id.* at 874, 107 S.Ct. 3164 (internal quotation marks and citation omitted). "Inherent in the very nature of probation is that probationers do not enjoy the absolute liberty to which every citizen is entitled." *Knights*, 534 U.S. at 119, 122 S.Ct. 587 (internal quotation marks and citation omitted). "[A] probationer's rights concerning searches are more limited than the rights of a person not on probation." *Gardner*, 95 N.M. at 174, 619 P.2d at 850. "Probationers are not *auto-*

*matically* granted full constitutional protection." *Gallagher,* 100 N.M. at 699, 675 P.2d at 431; *see also State v. Baca,* 90 N.M. 280, 282, 562 P.2d 841, 843 (Ct.App.1977) ("Probation assumes the offender can be rehabilitated without serving the suspended jail sentence. It is not meant to be painless. It has an inherent sting and the restrictions on the probationer's freedom are realistically punitive.").

{24} The United States Supreme Court permitted an exception to the warrant requirement in probation searches when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin,* 483 U.S. at 873, 107 S.Ct. 3164 (internal quotation marks and citation omitted). In *Griffin,* the Supreme Court held a warrantless probation search reasonable under the Fourth Amendment because it was conducted in compliance·with a probation regulation that itself satisfied the Fourth Amendment reasonableness requirement. *Id.* at 873, 887, 107 S.Ct. 3164. The regulation permitted warrantless probation searches if based on "reasonable grounds," rather than "probable cause." *Id.* at 871, 876, 107 S.Ct. 3164. The Court reasoned that the state's operation of a probation system presented " 'special needs' beyond normal law enforcement ... justify[ing] departures from the usual warrant and probable-cause requirements." *Id.* at 873–74, 107 S.Ct. 3164.

{25} In *Knights,*[1] a probation search was conducted pursuant to a state court imposed probation condition requiring the probationer to submit to a search of his home "at anytime, with or without a search warrant ... or reasonable cause." *Knights,* 534 U.S. at 114, 122 S.Ct. 587. *Knights* concluded that the search in question satisfied the Fourth Amendment because it was supported by reasonable suspicion. *Id.* at 122, 122 S.Ct. 587. The Court determined that it need not address the issue of the constitutionality of a suspicionless search, i.e., whether a search without any individualized suspicion as permitted in the probation condition would have satisfied the reasonableness requirement of the Fourth Amendment, since the Court examined on its own whether reasonable suspicion supported the search and held that it did. *Id.* at 120 n. 6, 122 S.Ct. 587; *see also People v. Lampitok,* 207 Ill.2d 231, 278 Ill. Dec. 244, 798 N.E.2d 91, 105 (2003) (noting, after discussing *Knights* and *Griffin,* that "[e]ven though the Supreme Court has not yet directly addressed [the issue of the minimum level of individualized suspicion that would satisfy the Fourth Amendment], we note that the clear majority of federal courts of appeals also require reasonable suspicion to support a probation search").

{26} In *Knights,* addressing the reasonableness of a warrantless search of a probationer's home, the Supreme Court stated that "the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." 534 U.S. at 118–19, 122 S.Ct. 587 (internal quotation marks and citation omitted). After balancing the government's interests and the probationer's private interests, a unanimous Supreme Court held a warrantless probation search valid under the Fourth Amendment where reasonable suspicion supported the search. *Id.* at 121–22, 122 S.Ct. 587.

{27} The Court in *Knights* reasoned that the liberty interests of probationers were legitimately restricted through probation conditions and that probationers therefore had "significantly diminished" expectations of privacy. *Id.* at 119–20, 122 S.Ct. 587. The Court determined that the balance of governmental and private interests "warrant a lesser than probable-cause standard," make a reasonable suspicion standard constitutionally sufficient, and "render a warrant requirement unnecessary." *Id.* at 121, 122 S.Ct. 587; *see also Lampitok,* 278 Ill.Dec. 244, 798 N.E.2d at 104–05 (balancing private and gov-

---

1. Defendant's motion to suppress was heard in November 2001 and denied in January 2002. *Knights* was decided in December 2001. *Knights,* 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). Surprisingly, the State did not mention *Knights* in its appellate brief and Defendant minimally drew *Knights* to our attention indicating it "overruled" *United States v. Knights,* 219 F.3d 1138 (9th Cir.2000).

ernmental interests, holding that probationer has a reduced expectation of privacy compared to ordinary citizens). The Court noted that "[t]he degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable." *Knights*, 534 U.S. at 121, 122 S.Ct. 587.

#### b. Application of State Constitution—*Gomez* Analysis

{28} Defendant acknowledges that the right he asserts is not protected by the Fourth Amendment to the United States Constitution. Offering the *Gomez* interstitial approach, *see State v. Gomez*, 1997–NMSC–006, ¶ 20, 122 N.M. 777, 932 P.2d 1, Defendant asks this Court to impose a probable cause and exigent circumstances requirement, or, at the very least, a reasonable suspicion and exigent circumstances requirement, to a warrantless probation search.

{29} In *State v. Marquart*, 1997–NMCA–090, ¶¶ 11, 16, 123 N.M. 809, 945 P.2d 1027, we determined that Article II, Section 10 of the New Mexico Constitution provided more protection to probationers than that afforded under federal law in regard to the application of the exclusionary rule to probation revocation proceedings. Relying on *Marquart* and on other New Mexico cases providing more protective State constitutional relief under Article II, Section 10,[2] Defendant asks us to interpret Article II, Section 10 to afford greater protection than that provided by federal law for warrantless searches of a probationer's home when evidence obtained from the search is the subject of a separate criminal prosecution.

{30} A court applying the *Gomez*-interstitial approach, after first determining that the right being asserted is not protected under federal law, is to turn to our State Constitution. 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1. In examining our Constitution, the court may diverge from federal precedents if (a) the federal analysis is flawed, (b) structural differences exist between state and federal government, or (c) there exist distinctive state characteristics. *Id.* If one of these circumstances is shown by the defendant to exist and to compel a more protective approach than that available under the Fourth Amendment, the court may grant the more protective relief under the State Constitution. *See State v. Cline*, 1998–NMCA–154, ¶ 16, 126 N.M. 77, 966 P.2d 785 (stating that, where consent is a valid exception to the warrant requirement under federal law, the court "must proceed to examine whether there is any compelling reason why [the] consent should not constitute an exception as well to the warrant requirement of Article II, Section 10 of the New Mexico Constitution").

#### (1) Federal Analyses Are Not Flawed

{31} Defendant does not argue that the federal analyses are flawed and our review of *Griffin* and *Knights* reveals no flaws. We cannot say that the analyses in *Griffin* and *Knights* are flawed. Starting with *Griffin*, the Court held the "special needs" of a state's probation system, beyond normal law enforcement, justified an exception to the "usual warrant and probable-cause requirements." *Griffin*, 483 U.S. at 873–74, 107 S.Ct. 3164; *see also Lampitok*, 278 Ill.Dec.

---

**2.** Defendant cites *State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 21, 130 N.M. 386, 25 P.3d 225 (ruling that prolonged border patrol checkpoint stop violated N.M. Const. art. II, § 10); *State v. Gomez*, 1997–NMSC–006, ¶ 39, 122 N.M. 777, 932 P.2d 1 (requiring particularized showing of exigent circumstances for warrantless search of vehicle under N.M. Const. art. II, § 10); *Campos v. State*, 117 N.M. 155, 158–59, 870 P.2d 117, 120–21 (1994) (declining to adopt federal rule allowing warrantless arrest without exigent circumstances); *State v. Gutierrez*, 116 N.M. 431, 445–47, 863 P.2d 1052, 1066–68 (1993) (rejecting good faith rationale under Fourth Amendment and the federal rationale for the exclusionary rule based on deterring police misconduct); *State v. Cordova*, 109 N.M. 211, 217, 784 P.2d 30, 36 (1989) (rejecting Fourth Amendment rationale for the "totality of circumstances" test to establish probable cause); *State v. Snyder*, 1998–NMCA–166, ¶¶ 18–24, 126 N.M. 168, 967 P.2d 843 (holding that N.M. Const. art. II, § 10 exclusionary rule applied to use of evidence in state court criminal proceeding when that evidence resulted from warrantless search by federal border patrol agents at checkpoint in New Mexico).

244, 798 N.E.2d at 104 (holding that "imposing the traditional warrant and probable-cause requirements would unduly interfere with the effective administration of the Illinois probation system" because "the process of obtaining a warrant would delay the officer's ability to respond to evidence of misconduct by the probationer" and "would facilitate the probationer's evasion of probation conditions through concealment of misconduct").

{32} The *Knights* Court weighed a state's interest in its probation system against a probationer's diminished expectation of privacy and required reasonable suspicion for warrantless searches. 534 U.S. at 118–22, 122 S.Ct. 587; *see also In re interest of A.C.C.*, 44 P.3d 708, 712 (Utah 2002) ("Thus, like the United States Supreme Court, we too have stated that whether an individual convicted of a crime has any reasonable expectation of privacy requires a balancing of the government's interest in operating its [probation system] and the individual's privacy interest."). In New Mexico, as well, whether a search is unreasonable is determined by balancing the degree of intrusion into a probationer's privacy against the interest of the government in promoting rehabilitation and protecting society. *See State v. Romero*, 2002–NMCA–064, ¶ 8, 132 N.M. 364, 48 P.3d 102.

### (2) No Structural Differences or Distinctive Characteristics

{33} Given that Defendant has not argued that the federal analyses are flawed, at most, he seeks departure from federal law based on structural differences or distinctive characteristics by arguing that the focus of the Fourth Amendment in *Griffin* was the state's operation of a probation system, deterrence, and special needs, whereas, according to Defendant, the focus of N.M. Const. art. II, § 10 in *Marquart* is on the probationer and rehabilitation. Defendant argues that "[t]he general purposes of probation in New Mexico are education and rehabilitation without the requirement of the defendant serving the suspended period of incarceration."

{34} Defendant offers further reasons to depart from federal law asserting that the New Mexico probation regime "would not be unduly disrupted by a requirement of probable cause plus exigent circumstances or reasonable suspicion plus exigent circumstances," relying on our case law that treats the exclusionary rule differently due to the factor of deterrence. *See State v. Snyder*, 1998–NMCA–166, ¶ 15, 126 N.M. 168, 967 P.2d 843 (stating "New Mexico's exclusionary rule is not based on the rationale that suppression of tainted evidence is warranted only if such suppression is likely to alter the behavior or policies of law enforcement officials [but instead] 'focuses on the constitutional rights of individuals.'" (quoting *Marquart*, 1997–NMCA–090, ¶ 17, 123 N.M. 809, 945 P.2d 1027)). Finally, Defendant recites language in *Vigil v. Martinez*, 113 N.M. 714, 720–21, 832 P.2d 405, 411–12 (Ct.App.1992), and cites NMSA 1978, § 31–21–4 (1963), in regard to the functions of a probation officer, and the distinction between the duty to maintain public order and the duty to further a probationer's rehabilitation. In turning to the statutory duties of probation officers, Defendant argues that the conduct of the probation officers in the present case "exhibited the lack of urgency, lack of focus upon rehabilitation of the probationer, and the preoccupation with [Defendant] obeying all laws which displaced the principal or chief duty of [Defendant's] probation officer." The chief duty, Defendant asserts, was to further Defendant's rehabilitation by helping him to become a good citizen.

{35} None of Defendant's arguments has persuaded us that, under a *Gomez* interstitial approach, there are any reasons, much less compelling ones, to depart from *Griffin* and *Knights* based on structural differences or distinctive characteristics. It is clear that, under New Mexico law, "a probationer's rights concerning searches are more limited than the rights of a person not on probation." *Gardner*, 95 N.M. at 174, 619 P.2d at 850. It is also clear, under New Mexico law, that a warrantless search probation condition is permissible if reasonably related to the probationer's rehabilitation. *Id.* Defendant, indeed, acknowledges that "a probationer clearly does not have all of the rights of a non-probationer."

{36} The general purposes of probation, under federal or New Mexico law, are rehabilitation and deterrence for community safety, which involve special needs beyond law enforcement, such as supervision. *See Knights,* 534 U.S. at 119, 122 S.Ct. 587; *Griffin,* 483 U.S. at 873–75, 107 S.Ct. 3164; *see, e.g., United States v. Conway,* 122 F.3d 841, 842 (9th Cir.1997) (determining that Washington's probation scheme "promotes the goal of rehabilitation" and the enhancement of "community safety by permitting the rapid detection of contraband and criminal activity"); *Donaldson,* 100 N.M. at 119, 666 P.2d at 1266 (stating that a judge "may impose conditions reasonably related to ... rehabilitation, which are designed to protect the public against the commission of other offenses during the term, and which have as their objective the deterrence of future misconduct" (citation omitted)); *Baca,* 90 N.M. at 281–82, 562 P.2d at 842–43 ("The broad general purposes to be served by probation are education and rehabilitation.").

{37} Our probation-related search cases are consistent with the federal law allowing warrantless searches as developed in *Knights* and *Griffin. See Marquart,* 1997–NMCA–090, ¶ 19, 123 N.M. 809, 945 P.2d 1027 ("Our ruling, however, does not prevent a court from imposing as a condition of probation that the probationer give his or her consent to reasonable warrantless searches by a *probation officer* to ensure compliance with the conditions of probation."); *Gallagher,* 100 N.M. at 699, 675 P.2d at 431 (holding a warrantless probation search condition, that is reasonably related to a probationer's rehabilitation, is a valid limitation to a defendant's Fourth Amendment rights); *Gardner,* 95 N.M. at 174, 619 P.2d at 850 (upholding a warrantless probation search provision as reasonably related to the probationer's rehabilitation). *Gallagher* and *Gardner* in fact upheld probation search conditions that did not expressly require probable cause, reasonable cause, or reasonable suspicion. *See Gallagher,* 100 N.M. at 698, 675 P.2d at 430 ("You shall permit your probation officer to visit at your home and

place of employment at any time and permit a search of your person, automobile, and residence to ensure compliance of your probation conditions."); *Gardner,* 95 N.M. at 172, 619 P.2d at 848 ("Defendant shall submit to a search of his car, person or residence at anytime upon request of his probation officer."). Today, of course, warrantless probation searches in New Mexico cannot, under *Knights* and *Griffin,* be without a proper showing of an adequate degree of likelihood of criminal activity.

### (3) Reasonable Suspicion, Not Probable Cause, Is Required

{38} New Mexico Probation and Parole Division (PPD) Regulation 214 defines a reasonable cause search and limits the execution of a warrantless search pursuant to the probation condition to "[a] search in which available evidence would lead a reasonable person to believe that the offender is in possession of prohibited items or that evidence of a violation will be found." As applied to criminal conduct,[3] this definition is consistent with the definition of reasonable suspicion in our New Mexico case law. *See State v. Urioste,* 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("Police officers possess reasonable suspicion when they are aware of specific articulable facts that ... would lead a reasonable person to believe criminal activity occurred or was occurring." (internal quotation marks and citation omitted)); *State v. Galvan,* 90 N.M. 129, 131, 560 P.2d 550, 552 (Ct.App. 1977) (stating that reasonable suspicion is to be judged by whether "the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate"). Our view of reasonable suspicion stems from *United States v. Brignoni–Ponce,* 422 U.S. 873, 882–84, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). *See Galvan,* 90 N.M. at 131, 560 P.2d at 552.

{39} Defendant cites *State v. Gutierrez,* 116 N.M. 431, 439, 863 P.2d 1052, 1060 (1993), and *Black's Law Dictionary* 1138, 1081 (5th ed.1979), asserting reasonable

---

3. We do not address the breadth of the reasonable cause requirement in PPD Regulation 214 insofar as it might be read to permit warrantless searches based on reasonable cause to believe a violation has occurred of a condition of probation not involving suspected criminal activity.

cause must be equated with probable cause. Defendant argues that *Gutierrez* equated probable cause with reasonable cause through its citation to *State v. Lucero*, 70 N.M. 268, 275, 372 P.2d 837, 842 (1962). Defendant further states that *Black's Law Dictionary* defines "reasonable cause," "reasonable belief," and "probable cause," with basically the same meaning: "[a] reasonable ground for belief in the existence of facts." *Black's Law Dictionary* 1081. Defendant's message appears to be that no "reasonable cause" standard is acceptable or applicable if it is not the same as the probable cause standard, since reasonable cause and probable cause mean the same thing. Presumably, Defendant thinks PPD Regulation 214 must be read as requiring probable cause.

{40}　Assuming we read Defendant's argument correctly, we think Defendant is stretching too much to try to support his constitutional contention. *Lucero* does not appear in any way to suggest that a reasonable cause standard equates to a higher probable cause standard. *See Lucero*, 70 N.M. at 275, 372 P.2d at 842. *Gutierrez* does not suggest this when it cites *Lucero*. Through its rule-making authority, our Supreme Court has made a distinction between probable cause and reasonable cause in regard to nighttime search warrants. *See State v. Garcia*, 2002–NMCA–050, ¶¶ 10–16, 132 N.M. 180, 45 P.3d 900 (discussing Rule 6–208(B) NMRA 2004 requiring a district court to determine whether "reasonable cause," apart from the affidavit supported by probable cause, exists to support a nighttime search). However, apart from PPD Regulation 214, in a search and seizure context, reasonable cause does not appear to have been as yet defined in New Mexico law.

{41}　We see no reason to equate reasonable cause with probable cause. Nothing greater than reasonable suspicion is constitutionally required under federal law. We therefore do not construe our Constitution to require any higher degree of probability than reasonable suspicion as long as the suspected probation violation on which the warrantless search is based is reasonably related to the probationer's rehabilitation or to community safety.

{42}　"[P]robationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply." *Knights*, 534 U.S. at 120, 122 S.Ct. 587. Probation status significantly reduces a probationer's expectation of privacy. *See id.* at 119–20, 122 S.Ct. 587; *see also . United States v. Tucker*, 305 F.3d 1193, 1199 (10th Cir.2002) (stating same for parolee). Probationers understand through the probation order that part of the supervision includes warrantless searches. *See Knights*, 534 U.S. at 119–20, 122 S.Ct. 587. Probation is imposed as a criminal sanction for both rehabilitation and protection of society. *Id.* at 119, 122 S.Ct. 587; *Donaldson*, 100 N.M. at 119, 666 P.2d at 1266 (stating that "[p]robation is an act of clemency," it "is not meant to be painless," and conditions of probation related to the probationer's rehabilitation are to protect the public and deter future misconduct). The diminishment in the expectation of privacy permits a lower threshold for reasonableness in conducting searches relating to suspected criminal activity by probationers. We think reasonable suspicion is the appropriate threshold.

{43}　In conclusion, we hold that warrantless probation searches can and must be supported by reasonable suspicion as defined in New Mexico law to be an awareness of specific articulable facts, judged objectively, that would lead a reasonable person to believe criminal activity occurred or was occurring. We do not in any way intend by this holding to undermine or lessen this Court's or our Supreme Court's steadfast preference for warrants, *see Gomez*, 1997–NMSC–006, ¶ 36, 122 N.M. 777, 932 P.2d 1, outside of clearly recognized exceptions, or in the probation context involving reasonable suspicion to believe that criminal conduct has occurred or is occurring.

#### (4) Exigent Circumstances Are Not Required

{44}　Understanding that we might not require a standard more stringent

than reasonable cause or reasonable suspicion, Defendant seeks to add the requirement of exigent circumstances to the lesser standard. Exigent circumstances are those giving rise to "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Id.* ¶ 39 (internal quotation marks and citation omitted). We do not see any reason to require exigent circumstances in connection with a warrantless probation search supported by reasonable suspicion.

{45} The exigent circumstances requirement is part and parcel of the "probable cause plus exigent circumstances" exception to the warrant requirement. *State v. Tywayne H.,* 1997–NMCA–015, ¶ 16, 123 N.M. 42, 933 P.2d 251. No New Mexico case attaches the exigent circumstances concept to warrantless probation searches. Defendant cites no case from another jurisdiction holding that the exigent circumstances concept attaches to warrantless searches based on reasonable suspicion or reasonable cause. We are unwilling to take that step. *See Ott v. State,* 967 P.2d 472, 475–76 (Okla.Crim. App.1998) (indicating exigent circumstances were not required in warrantless parole search based on reasonable grounds); *State v. Lockwood,* 160 Vt. 547, 632 A.2d 655, 662–63 (1993) (rejecting the probationer's request that the court construe the state constitution to require a warrant, even though, like in New Mexico, the court in *State v. Savva,* 159 Vt. 75, 616 A.2d 774, 781 (1991), had earlier determined, that the state constitution required a warrant for vehicle searches absent a showing of exigent circumstances); *cf. Tywayne H.,* 1997–NMCA–015, ¶¶ 8–10, 16, 123 N.M. 42, 933 P.2d 251 (distinguishing warrantless searches of students by school officials based on reasonable suspicion, constitutionally permissible under *T.L.O.,* 469 U.S. at 340–41, 105 S.Ct. 733, from searches by police officers requiring both probable cause and a warrant unless the warrantless search fell within the probable cause plus exigent circumstances exception to the warrant requirement).

{46} Defendant was aware of the formal conditions of probation. Formal conditions of probation give notice to the probationer of proscribed activities. *State v. Doe,* 104 N.M. 107, 109, 717 P.2d 83, 85 (Ct.App. 1986). Defendant was aware of the possible consequences of violating proscribed activities and of the warrantless search condition. There existed no lack of fairness in notice to Defendant of the consequences of engaging in proscribed conduct, including a warrantless search. With fair warning of the consequences of violating probation by engaging in prohibited criminal conduct, we fail to see why a probationer should be protected from warrantless searches based on reasonable suspicion by a further requirement of exigent circumstances.

{47} In placing a convicted criminal under strict conditions of probation and under probation supervision, the policy of the State of New Mexico and the obligation of the courts of New Mexico are to place guarded trust in the probationer to consciously conduct himself in a manner to prove he can remain free from criminal activity. The warrantless search condition is fairly and reasonably placed in the probation order to facilitate the probation officer's important supervisory and protective duties to help assure that the probationer assumes his responsibility—a responsibility both to the probationer himself and to society, to stay on a path of rehabilitation. "By the fact of . . . conviction, the probationer has already demonstrated a need for supervised control." *Gallagher,* 100 N.M. at 699, 675 P.2d at 431 (internal quotation marks and citation omitted); *see also United States v. Lewis,* 71 F.3d 358, 362 (10th Cir.1995) (upholding a warrantless parole search, stating that, "[t]o adequately monitor a parolee's progress and deter further criminal conduct, a parole agent must be permitted in the proper instance to act expeditiously and without warning"); *Lampitok,* 278 Ill.Dec. 244, 798 N.E.2d at 104 (determining that imposition of warrant and probable cause requirements "would unduly interfere with the effective administration of the Illinois probation system," would delay a probation officer's "ability to respond to evidence of misconduct" in connection with the officer's particular ability

to determine the appropriate level of supervision, and "would facilitate the probationer's evasion of probation conditions through concealment of misconduct"); *Bauer*, 260 Cal. Rptr. at 66 (stating that a warrantless search condition enables the probation officer to ascertain whether the probationer is complying with the terms of probation, whether he disobeys the law, and whether he obeys the law).

{48} Finally, we note that the reasonable suspicion requirement is protective enough because it does not permit a lesser standard of random, indiscriminate spot searches based on speculation or less. Reasonable suspicion adequately addresses a probationer's more limited expectation of privacy as well as standards of privacy that society should expect for those given the chance at rehabilitation.

{49} Defendant has not offered either authority or argument to convince this Court that a warrantless search probation condition under which warrantless searches are conducted pursuant to reasonable suspicion is an unreasonable condition absent exigent circumstances. In conclusion, we hold that exigent circumstances are not required to make a warrantless probation search reasonable. We hold that, for rehabilitation and community safety purposes, probation officers have the right to conduct warrantless searches without the added requirement of exigent circumstances.

## Reasonable Suspicion Was Satisfied

{50} Defendant argues that, if the lesser standard of reasonable suspicion applies, the district court erred by finding that reasonable suspicion existed. Defendant asserts the tip from the confidential source was not sufficiently corroborated before the warrantless probation search to satisfy a reasonable suspicion standard. Defendant cites to *Urioste* indicating an informant's information must be sufficiently verified to show "past, present or pending criminal conduct" likely occurred or is occurring. 2002–NMSC–023, ¶ 9, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted).

{51} Our Supreme Court further explained in *Urioste* that when a confidential source's tip has a relatively low degree of reliability, but is corroborated by subsequent investigation, even the observation of lawful conduct can establish reasonable suspicion. *Id.* ¶¶ 16–17. In the present case, the district court ruled reasonable suspicion existed based on the confidential source and the fact that Cleland "further investigated [D]efendant's household income, assets, debts, and continuing expenses to determine that [D]efendant's continuing lifestyle was above and inconsistent with his means." The district court concluded "[o]ne could reasonably expect to see evidence of continuing and unexplained wealth or affluent lifestyle from someone involved in continuous trafficking of drugs." Cleland's knowledge of the confidential informant's tip, corroborated with the facts of which he became aware through his subsequent investigation of Defendant's financial situation, constituted articulable facts, objectively judged, that could lead a reasonable person to believe a violation of a condition of probation occurred or was occurring. *See id.* ¶¶ 6, 16–17 (holding an informant's tip, if questionable, can be corroborated by the observation of lawful conduct); *cf. State v. Gonzales*, 1999–NMCA–027, ¶ 28, 126 N.M. 742, 975 P.2d 355 (holding an informant's tip can establish reasonable suspicion, without investigative confirmation, if the tip is credible); *State v. Taylor*, 1999–NMCA–022, ¶ 8, 126 N.M. 569, 973 P.2d 246 (holding a tip by informant who claimed to witness wrongdoing sufficient to establish reasonable suspicion); *State v. Flores*, 1996–NMCA–059, ¶ 8, 122 N.M. 84, 920 P.2d 1038 ("An anonymous tip may justify an investigatory stop if the information is sufficiently corroborated by subsequent investigation to establish reliability."). Furthermore, "[r]easonable suspicion may exist . . . on information less reliable than that needed to establish probable cause." *Tucker*, 305 F.3d at 1201.

{52} We hold that there existed a sufficiently high degree of individualized suspicion that criminal conduct had occurred to make the intrusion on Defendant's privacy interest reasonable under the Fourth Amendment and under Article II, Section 10 of the New Mexico Constitution. The warrantless search probation condition in the present case was constitutionally valid. The

**506**

district court did not abuse its discretion in holding the warrantless search was supported by reasonable suspicion and was constitutionally valid.

### Subterfuge for Investigation

 {53} Defendant asserts that the search by the probation officers accompanied by the detectives constituted a subterfuge for an investigation. He correctly points out that this Court in *Gardner* quoted federal case authority stating that "under no circumstances should cooperation between law enforcement officers and probation officers be permitted to make the probation system a subterfuge for criminal investigations." *Gardner*, 95 N.M. at 175, 619 P.2d at 851 (internal quotation marks and citation omitted). However, as *Gardner* determined, the fact that "there was cooperation between the probation officer and the police did not make the search illegal, because it was requested by the probation officer." *Id.* Additionally, according to *Gardner*, a visit by a probation officer does not cease to be proper because he is accompanied by a law enforcement official. *Id.*

{54} In the present case, Cleland testified he requested the detectives to accompany him and his partner while executing the warrantless probation search for security reasons and that the detectives conducted no search of the house, other than to assure no one was present in the house, until the probation search ceased, and the detectives obtained a search warrant. The record indicates Cleland had reasonable suspicion to support a warrantless probation search based on the information he gathered and the tip reported by Kunkle. The probation search was executed by Cleland accompanied by his partner and two detectives.

{55} Under PPD regulation, in non-emergency circumstances, a probation officer is to "seek the assistance of a law enforcement agency in conducting the search." PPD Reg. 214.1(II)(A). We have no doubt, under the facts, that Cleland believed the search was necessary to perform his duties properly. *See Gardner*, 95 N.M. at 175, 619 P.2d at 851 (stating that, "[w]hen the search is at the probation officer's request, . . . the

search was reasonable if the probation officer believes that a search is necessary to perform his duties properly" (internal quotation marks and citation omitted)). We conclude that the district court did not err in determining that the warrantless probation search, which was initiated and controlled by the probation officers, did not constitute a subterfuge for law enforcement investigation.

## CONCLUSION

{56} We affirm the district court's order denying Defendant's motion to suppress.

{57}  **IT IS SO ORDERED.**

JAMES J. WECHSLER, C.J. and MICHAEL D. BUSTAMANTE, J., concur.