IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: September 22, 2014

Docket No. 31,787

STATE OF NEW MEXICO,

  Plaintiff-Appellee,

v.

JOHN GREEN,

  Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Carl J. Butkus, District Judge

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Public Defender
Santa Fe, NM

for Appellant

OPINION

HANISEE, Judge.

{1} This appeal follows the revocation of Defendant's probation and his ensuing return to incarceration in order to conclude his original term of imprisonment in full. In 2003, after pleading guilty to second-degree kidnapping and murder, Defendant was sentenced to nineteen years, of which nine were suspended by the district court. In 2008, after about five years in prison, Defendant was released on probation. Within months of his release, however, the State began to allege what became a series of ensuing violations that

1

culminated in the revocation of Defendant's probation. Ultimately, the district court ordered Defendant to serve the balance of his sentence in prison, including a previously imposed one year habitual offender enhancement. Defendant appeals both the revocation of his probation, as well as the conditions of probation. We affirm.

**BACKGROUND**

{2}     In 2001 Defendant was indicted for the kidnapping, rape, and murder of Kathryn Dockweiller, an Albuquerque attorney, in 1988. Defendant was allowed to plead guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970) (holding that a district court may accept a defendant's guilty plea despite an absence of admission to criminal wrongdoing), to second-degree murder, contrary to NMSA 1978, § 30-2-1(B) (1980) and kidnapping, contrary to NMSA 1978, § 30-4-1 (1973).[1] During the plea hearing, Defendant did not oppose the State's request that the district court take judicial notice of the grand jury proceedings and content of the indictment to establish a factual basis for the plea.

{3}     The record reveals that Detective Bill Peters of the cold-case unit of the Bernalillo County Sheriff's Department provided testimony to the grand jury that indicted Defendant. He informed the grand jury that Ms. Dockweiller had disappeared on May 12, 1988, and was found several days later in a shallow grave, still bound and gagged. The Office of the Medical Investigator (OMI) concluded that the nature and manner of death had been homicide by strangulation. Pursuant to the death investigation conducted by OMI, vaginal swabs were taken from Ms. Dockweiller that revealed the presence of semen within Ms. Dockweiller's body that had been deposited there "at or near the time of her death." Defendant was originally a suspect in Ms. Dockweiller's murder, and following a report from his ex-wife over a decade later, wherein she disclosed her discovery of Ms. Dockweiller's calendar concealed within Defendant's vehicle, Detective Peters obtained a search warrant for Defendant's DNA, which was found to match the DNA obtained from Ms. Dockweiler's body. Based on this discovery, Defendant was indicted and chose to plead guilty in lieu of trial.

{4}     Following the plea colloquy, the district court observed that the murder of Ms. Dockweiller was in fact the second murder Defendant had committed. A pre-sentencing report informed the district court that Defendant had been previously sentenced to serve a twenty-year period of imprisonment in Texas based upon an unrelated homicide and attempt

---

[1]We note that on the "Repeat Offender Plea and Disposition Agreement" (plea agreement), the words "no contest" are crossed out and the phrase "guilty pursuant to *Alford*" is written in its place. The plea agreement, which also established the sentencing parameters agreed to by the parties, was signed by the prosecutor as well as by Defendant and his attorney.

to commit criminal rape in 1979.[2] Based on the circumstances of the instant case and in light of Defendant's past criminal history, the district court ordered that he serve the statutory maximum penalty of nine years for the second-degree murder of Ms. Dockweiller, nine additional years for her kidnapping, and an extra year because he was a habitual offender. Due to the ten-year sentencing cap established within the plea agreement, however, the district court suspended nine of Defendant's nineteen year cumulative sentence. It imposed the maximum available period of probation of five years, alongside two years of supervised parole. In its judgment and sentence, the district court ordered probation to be wholly conditioned upon Defendant "obey[ing] all rules, regulations[,] and orders of the [p]robation [a]uthorities."

{5}    When Defendant was released from prison, he signed a sex offender behavioral contract. Although not required to register as a sex offender under the Sex Offender Registration and Notification Act (SORNA), NMSA 1978, §§ 29-11A-1 to -10 (1995, as amended through 2013), Defendant was compelled to comply with various sex-offender-related terms of probation, including abstention from the purchase, possession, or subscription to "any sexually oriented or sexually stimulating material." In the contract, Defendant agreed that probation authorities were free to examine any computer Defendant could access for inappropriate content, including, but not limited to pornography. Within months of Defendant's release and placement on probation in 2008, probation authorities alleged that he was in violation of specific prohibitions to which he had agreed. Specifically, the probation violation report alleged that Defendant had associated with other probationers and parolees, responded to personal dating ads on the internet, and left the county without permission. He was arrested on the probation violations, and the State sought revocation of his probation.

{6}    At the time, Defendant challenged the allegations on the grounds that the sex offender behavioral contract he was required to sign was not reasonably related to the charges of conviction, and that the "overbroad, pervasive, and undifferentiated restrictions" associated with sex offender probation violated his due process rights. He relied on *State v. Williams*, in which we held that a defendant not convicted of a sex offense under SORNA cannot be subjected to SORNA requirements. 2006-NMCA-092, ¶ 12, 140 N.M. 194, 141 P.3d 538. The State, through the New Mexico Corrections Department (NMCD), filed a response, maintaining that the crimes of conviction, considered alongside what was known regarding his prior murder conviction, justified the probationary supervision he received. NMCD asserted that probation authorities have broad discretion to supervise probationers with those conditions it deems appropriate and that NMSA 1978, Section 31-21-4 (1963) requires that the post-release probationary treatment of persons convicted of crimes "shall take into consideration their individual characteristics, circumstances, need[s,] and

---

[2]Although the record does not shed light on how much of his sentence Defendant actually served in Texas, it was clearly less than the twenty years as he murdered Ms. Dockweiller in 1988, merely nine years later.

3

potentialities." Following a hearing, the district court denied Defendant's motion to modify the terms and conditions of his probation, yet did not then revoke Defendant's probation.

{7}     In May 2011 Defendant was again arrested for what were alleged to be additional probation violations. This time, the probation report asserted that Defendant: (1) was in violation of his behavioral contract as he was found to have pornographic imagery on his computer; (2) had responded to personal advertisements on his laptop computer in violation of the behavioral contract; and (3) had violated his probation by associating with other probationers and parolees. During the ensuing violation hearing, Officer Baum, Defendant's probation supervisor, testified that when Defendant had initially signed the behavioral contract and Defendant had reviewed the conditions contained within it, specifically including the conditions on computer usage that disallowed pornography and sexually explicit material. The officer testified that upon opening and examining Defendant's computer, he observed a "photo of a nude woman." Officer Baum testified that he asked Defendant if "there [were] any porn images" on the computer, and Defendant replied that there were. Officer Baum stated that he and a colleague later conducted a forensic examination of the computer and found numerous pornographic images. Over Defendant's objection as to foundation, a collage of the images found were entered into evidence as State's Exhibit 2 (Exhibit 2) during Defendant's revocation hearing. Following the hearing, the court revoked Defendant's probation and ordered that he serve the remainder of his original sentence.

{8}     Defendant appeals the revocation of his probation on three bases, arguing that: (1) the requirement that he sign a sex offender behavior contract was an illegal condition of probation; (2) there was insufficient evidence to support any of the probation violations found by the district court or, in the alternative, he lacked notice that his conduct could constitute violations of the conditions of probation; and (3) the images found on Defendant's laptop lacked a proper foundation and should have been determined to be inadmissible.

## LEGALITY OF CONDITIONS OF PROBATION

{9}     New Mexico law places squarely within purview of the district court the authority to order a defendant to "satisfy any other conditions reasonably related to . . . rehabilitation." NMSA 1978, § 31-20-6(F) (2007). An award of probation is a discretionary act of the sentencing court, and a challenge to its terms and conditions is reviewed on appeal only for an abuse of discretion. *Williams*, 2006-NMCA-092, ¶ 3. "However, a sentencing court may not impose an illegal sentence. [I]t does not have the discretion to impose a probation term or condition that is contrary to law." *Id.* ¶ 4. "We review the legality of a [criminal] sentence under the de novo standard of review." *Id.*

### The Conditions of Probation Imposed by NMCD were Authorized by the District Court

{10}     Defendant first contends that the conditions of probation to which he was required to adhere were illegal because NMCD lacked the authority to mandate that his release be

4

conditioned upon his being party to any "sex offender behavior contract" that included conditions not expressly provided within the district court's judgment and sentence. To support his argument, Defendant relies upon Section 31-20-6, which requires that the sentencing court attach to its order "reasonable conditions as it may deem necessary to ensure that the defendant will observe the laws of the United States and the various states and the ordinances of any municipality." Defendant additionally relies on *State v. Martinez*, which states that "[c]onditions [of probation] may not be added by amendment subsequent to imposition of a valid original judgment." 1972-NMCA-135, ¶ 4, 84 N.M. 295, 502 P.2d 320.

**{11}** Considering this same issue, our Court determined that a district court's enumeration of a special probationary condition that the defendant "comply with any other reasonable conditions specified by the Probation and Parole Division[,]" is sufficient indicia to justify placement of a defendant on sex offender supervision. *State v. Leon*, 2013-NMCA-011, ¶ 24, 292 P.3d 493 (internal quotation marks omitted), *cert. quashed*, 2013-NMCERT-010, 313 P.3d 251. In *Leon*, we cited to *Martinez*, where the defendant "argued that the conditions imposed by the probation office were without legal effect because they were not part of the district court's order deferring his sentence." *Leon*, 2013-NMCA-011, ¶ 25. We determined that the language of the order in *Martinez* made the conditions imposed by the probation office the conditions of the defendant's probation. 1972-NMCA-135, ¶ 5.

**{12}** Here, the district court's order generally stated that "Defendant is ordered to be placed on supervised probation . . . on condition that Defendant obey all rules, regulations[,] and orders of the [p]robation [a]uthorities." As in both *Martinez* and *Leon*, the district court's judgment and sentence incorporates language which justified specific, individual requirements of probation. "That the terms and conditions set by the probation office were not spelled out in the order itself did not establish that those terms and conditions were not imposed by the court." *Leon*, 2013-NMCA-011, ¶ 26. On both our precedent and the facts of this case, we determine that the conditions of probation were sufficiently stated in the district court's original judgment and sentence.

**{13}** Relying on *United States v. Carter*, 463 F.3d 526 (6th Cir. 2006), Defendant nonetheless argues that NMCD failed to adequately justify its decision imposing sex offender conditions upon Defendant and that it never established that a sexual offense was committed in the first place. *Carter* stated that a district court must justify special conditions of supervised release at the time of sentencing and must "state in open court the reasons for its imposition of the particular sentence[.]" *Id*. at 528 (internal quotation marks and citation omitted). But we do not find *Carter* to be helpful or supportive of Defendant's position. Specifically, *Carter* does not support Defendant's contention that NMCD was required "to state its reasons and rationale for mandating special sex offender conditions of probation." *Carter* imposes, in a federal context, explanatory requirements solely upon the district court, not upon any probationary entity. More importantly, this requirement is imposed pursuant to federal statute, 18 U.S.C. § 3553(c) (2010), a mandate the New Mexico Legislature has not adopted. *See State v. Lack*, 1982-NMCA-111, ¶ 15, 98 N.M. 500, 650 P.2d 22

("Authority to grant probation is a matter of legislative grace, and the district court's power to impose probation is purely statutory.").

**{14}** We conclude that Defendant has not established that *Carter*, or any argument he has made regarding the behavioral contract, is able to overcome the probationary discretion authorized by *Martinez* and *Leon* that extends from the district court to probation authorities when worded as the district court did in this case. The behavioral contract Defendant was required to sign upon his release from prison and commencement of probation was a proper exercise of probationary authority pursuant to the judgment and sentence that followed and was based upon the plea agreement Defendant also signed. Defendant's signature on the plea agreement, provided in the presence of his attorney, acknowledged his understanding of its terms that included the five-year period of probation and warned that any violation could lead to Defendant's return to incarceration for the balance of the original sentence imposed.

**The District Court Did Not Err in Denying Defendant's Motion to Modify the Conditions of Probation**

**{15}** Defendant next argues that the district court abused its discretion in denying Defendant's motion to modify the conditions of release as no reasonable relationship existed between Defendant's convictions and the conditions of probation. He additionally argues that there was insufficient evidence in the record to support sex offender probation. Among other conditions, the sex offender supervision behavioral contract required that Defendant abstain from purchasing, possessing, or subscribing "to any sexually oriented or sexually stimulating material." He was also prohibited from possessing pornography. Defendant asserts that he was not convicted of a sexual offense, nor was there a factual basis or evidence supporting an inference that a sexual offense occurred, and therefore, these conditions were not reasonably related to his convictions of second-degree murder and kidnapping.

**{16}** Under the abuse of discretion standard appropriate for our review of conditions of probation, "we will not set . . . aside [the terms and conditions of a probation] unless they[:] (1) have no reasonable relationship to the offense for which the defendant was convicted, (2) relate to activity which is not itself criminal in nature, and (3) require or forbid conduct which is not reasonably related to deferring future criminality." *Williams*, 2006-NMCA-092, ¶ 3 (emphasis, alteration, internal quotation marks, and citation omitted). "To be reasonably related, the probation condition must be relevant to the offense for which probation was granted." *State v. Gardner*, 1980-NMCA-122, ¶ 19, 95 N.M. 171, 619 P.2d 847. On appeal, it is Defendant's burden to persuade us that the district court erred and abused its discretion in holding that a reasonable relationship existed between Defendant's kidnapping and murder convictions and his conditions of probation. *Leon*, 2013-NMCA-011, ¶ 28; *State v. Baca*, 2004-NMCA-049, ¶ 16, 135 N.M. 490, 90 P.3d 509. We determine Defendant failed to do so, and we remain unpersuaded by his conclusions to the contrary.

**{17}** As we have stated, Defendant pleaded guilty to the second-degree kidnapping of Ms.

6

Dockweiler. The statute at the time of her kidnapping and murder defined kidnapping as "the unlawful taking, restraining or confining of a person, by force or deception, with intent that the victim . . . (3) be held to service against the victim's will." Section 30-4-1(A)(3). Our Supreme Court has recognized that " 'h[olding] for service[s]' " can include holding a victim for sexual purposes. *See State v. McGuire*, 1990-NMSC-067, ¶¶ 8, 12, 110 N.M. 304, 795 P.2d 996. The district court record indeed contains evidence supporting the State's assertion that there was a sexual element to Defendant's crime. There was testimony before the grand jury that Defendant's semen was located within Ms. Dockweiler's deceased body and that it was "deposited at or near the time of her death." Furthermore, Defendant had been indicted by the grand jury on a charge of first degree criminal sexual penetration, a fact that the district court addressed at the hearing on Defendant's motion to modify in response to Defendant's assertion that the State did not present evidence that it believed a sex crime was committed. Lastly, the pre-sentence report indicates that this was not the first instance in which Defendant was charged with a sexually based crime; Defendant was previously charged with "[a]ttempt to [c]ommit [c]riminal [r]ape" in the state of Texas.

{18}    Thus, Defendant's contention that the requirement that he sign and adhere to a sex offender behavior contract bore no relation to facts suitable for the district court's or probation authorities' reliance is inaccurate and incomplete. His contention that these things are too remote in time or that he "never had an opportunity to challenge those assertions" misunderstands the distinction between what would have been required to convict him of sex offenses during a trial on the merits and what is properly relied upon to inform those tasked with maintaining community safety at the time Defendant was permitted to leave prison before his sentence was complete.

{19}    Again in this regard, we rely on *Leon*, 2013-NMCA-011, ¶¶ 27-34. There, the defendant pled no contest to contributing to the delinquency of a minor and selling or giving alcohol to a minor. *Id*. ¶ 2. Upon suspension of his sentence, the defendant was ordered by NMCD to sign a sex offender behavior contract. The defendant already had a prior felony conviction for a sex offense. *Id*. ¶ 3. This Court acknowledged that the defendant's current convictions involved criminal contact with minors and based on these circumstances, in addition to the defendant's criminal history, the district court did not err in determining that a sex offender behavior contract was reasonably related to the current convictions, rehabilitation, and public safety. *Id*. ¶¶ 30-31.

{20}    Although we recognize that in the case before us Defendant had not been convicted of a sexual offense, as had the defendant in *Leon*, such is not fatal to the conditions of Defendant's probation. Defendant was in fact charged with a sexual offense on two prior occasions and indicted by a grand jury on one of those charges. As in *Leon*, Defendant's current conviction involved criminal contact with Ms. Dockweiller, and what is more crucial to our analysis is, not only was it criminal contact, but of a sexual nature. What had become the cold case of Ms. Dockweiller's murder was solved solely as a result of the discovery that the semen found in her deceased body was Defendant's. It would be inappropriate that our Legislature's instruction that probation authorities study a defendant's case to determine that

individual's "characteristics, circumstances, needs and potentialities[,]" Section 31-21-4, somehow be viewed to require exclusion of such a material fact. Given the available facts regarding Defendant's current convictions, considered alongside his alarmingly similar criminal history, we cannot conclude that the district court abused its discretion in ruling that the conditions of his probation were reasonably related to his current convictions, rehabilitation, or public safety. *See Leon*, 2013-NMCA-011, ¶ 27 ("The court has broad discretion to effect rehabilitation and may impose conditions designed to protect the public against the commission of other offenses during the term, and which have as their objective the deterrence of future misconduct." (internal quotation marks and citation omitted)); *Baca*, 2004-NMCA-049, ¶ 36 ("The general purposes of probation . . . are rehabilitation and deterrence for community safety[.]").

**SUFFICIENCY OF EVIDENCE TO SUPPORT PROBATION REVOCATION**

**{21}** Defendant next asserts that there was insufficient evidence to support any of the alleged probation violations upon which his probation was revoked. The probation violation report alleged numerous violations, one being violation of the sex offender behavior contract that directly prohibited possession of sexual images on Defendant's laptop.[3] Defendant contends that this condition was overly vague such that a "reasonable person would not have known that the nude images would be considered pornography[,]" and thus he contends that the evidence was insufficient to support revocation of his probation. The State argues that the images depict pornographic, sexually oriented, or sexually stimulating photographic depictions, the very content Defendant was disallowed from possessing and was forewarned would constitute violative conduct.

**{22}** Proof of a probation violation need not be established beyond a reasonable doubt. *State v. Martinez*, 1989-NMCA-036, ¶ 4, 108 N.M. 604, 775 P.2d 1321. Instead, the evidentiary standard is that the violation must be established with a reasonable certainty, such that a reasonable and impartial mind would believe that the defendant violated the terms of probation. *State v. Sanchez*, 2001-NMCA-060, ¶ 13, 130 N.M. 602, 28 P.3d 1143. The burden of proving a violation with reasonable certainty lies with the State. *Leon*, 2013-NMCA-011, ¶ 36. "We review [a district] court's decision to revoke probation under an abuse of discretion standard. To establish an abuse of discretion, it must appear the [district] court acted unfairly or arbitrarily, or committed manifest error." *Martinez*, 1989-NMCA-036, ¶ 5 (citations omitted). We conclude that the State has met its burden, and the district

---

[3]Because we affirm the district court's ruling with regard to the violation of the sex offender behavior contract, contrary to Condition 5 of Defendant's conditions of probation, we will not reach the issue of whether there was sufficient evidence to prove the State's remaining allegations of probation violations. *See Leon*, 2013-NMCA-011, ¶ 37 (stating that "although [the d]efendant challenges the sufficiency of the evidence supporting each of his probation violations, if there is sufficient evidence to support just one violation, we will find the district court's order was proper").

court did not abuse its discretion in revoking Defendant's probation.

**{23}** Upon his release from custody, Defendant signed the sex offender behavior contract, and he acknowledged that he "read, or . . . had read to [him], and underst[ood] these additional supervision conditions." The contract stated, under condition A of the "computers/electronics/entertainment" provision, that Defendant was prohibited from possessing "any sexually oriented or sexually stimulating material." The condition explains that this "includes, but is not limited to: [s]exual devices, books, magazines, video/audio tapes, DVDs, CD ROMs, and [i]nternet websites." Condition C of the same provision stated that any computer to which Defendant had access would be subject to examination for inappropriate content, including but not limited to pornography or adult websites. Officer Baum had reviewed the conditions of probation with Defendant, and specifically informed Defendant that probation authorities would have "full access to [his] computer to do any searches on it for pornography or sexually explicit material." He testified that he informed Defendant that he was not to possess "any sexually explicit material[,]" including "[p]ictures[,] [n]aked women [or] [m]en. Anything that's sexually explicit."

**{24}** Baum additionally testified that upon performing a field visit, he and another probation officer located and searched Defendant's computer. Baum explained that in conducting the computer search he initially saw "a photo of a nude woman," and that Defendant "acknowledged that there was pornography on his computer[.]" Baum testified that he was present during a forensic examination that was conducted on Defendant's computer and viewed the resulting report containing the nude images. Exhibit 2 is the report and collage of nude images the State entered into evidence. At the conclusion of the hearing, the district court found that Defendant violated paragraph C of the "computers/electronics/entertainment" provision of the sex offender behavior contract, ruling that the images discovered on Defendant's computer were in fact pornography and revoked Defendant's probation.

**{25}** Although our case law contains little guidance on the definition of adult pornography, we are helped by our Supreme Court's definition of " 'sexually explicit exhibition' " and our Legislature's definition of "sexual conduct" in the context of sexual exploitation of children and sexually oriented material harmful to minors, respectively. Our Supreme Court has defined the term "sexually explicit exhibition" as a "graphic and unequivocal display or portrayal of nudity or sexual activity." *State v. Myers*, 2009-NMSC-016, ¶ 19, 146 N.M. 128, 207 P.3d 1105. Furthermore, our Legislature defines "sexual conduct" as an "act of masturbation, . . . physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be female, breast[.]" NMSA 1978, § 30-37-1(C) (1973). We conclude each of these definitions encompasses that which is "sexually oriented" within the terms of Defendant's sex offender behavior contract. Moreover, each such category was included within the many images collected by Defendant on his laptop hard drive.

**{26}** What Defendant contends to be "mere nudity," we, like the district court before us, hold to be at least nine images of or depicting sexual activity and/or physical contact with

9

unclothed female genitals or buttocks. Given the highly sexual nature of these images, in conjunction with Officer Baum's testimony that he informed Defendant that possession of these types of images were disallowed under the sex offender behavior contract, we conclude that not only did Defendant have notice of the prohibitions, but that there was sufficient evidence for a reasonable mind to conclude that Defendant violated this condition of probation and that the district court's revocation of Defendant's probation did not constitute an abuse of discretion.

## ADMISSIBILITY OF PHOTOGRAPHS

**{27}** As his last point of appeal, Defendant argues that the photographs contained in Exhibit 2 were improperly admitted on the basis that the State failed to properly authenticate or lay a sufficient foundation for their admission. "We review the district court's evidentiary rulings for an abuse of discretion." *State v. Neal*, 2007-NMCA-086, ¶ 36, 142 N.M. 487, 167 P.3d 935. Although Defendant acknowledges that the rules of evidence do not apply to probation revocation hearings, he nonetheless argues that his due process rights were violated because Exhibit 2 was improperly admitted.

**{28}** At the probation revocation hearing, Officer Baum testified that, after he saw the initial nude photograph on Defendant's computer, he arrested Defendant for a probation violation, and was present while another officer conducted a forensic examination on Defendant's computer. Baum testified that he saw the report containing the images that was generated from the examination and printed that report. Baum identified Exhibit 2 as the report he printed from the scan of Defendants computer based on a sticky note he placed on the document and the document itself. When the State sought admission of Exhibit 2 into evidence, Defendant objected on the grounds that the State had failed to lay the proper foundation. Defendant argued that another officer ran the software on Defendant's computer, and Baum merely "went and grabbed documents off the printer[, and] he ha[d] no idea how it all happened before then." Defendant asserted that it was too far of a stretch for Baum "to say that [the images] that came off the printer necessarily [were] on [Defendant's] computer." The district court disagreed and admitted the photos into evidence, explaining that Baum "was present at all times that the forensic examination was conducted[,]" and that he was "able to identify it . . . in court as the material that he saw at the time that the scan was done."

**{29}** Defendant now argues that Officer Baum could not provide proper authentication testimony to establish that Exhibit 2 was originally located on Defendant's computer. He also suggests that the images were placed on the computer by the software used by probation authorities, and notes that Baum cannot testify that the images were not already stored on the software prior to the forensic analysis of Defendant's computer. Defendant additionally contests Baum's identification of the document containing the images, asserting that "[i]t is inconceivable that Officer Baum actually recognized the images themselves from a single prior viewing" and that "Baum's recognition of the sticky note is an improper authentication for admission of the attached packet."

**{30}**     The primary problem with Defendant's challenge to the admission of Exhibit 2 is that rules of evidence do not apply during probation revocation hearings. *See* Rule 11-1101(D)(3)(d) NMRA; Rule 11-901 NMRA. Moreover, Defendant fails to cite any authority in support of his request that we apply an evidentiary standard to the contrary. Despite the detail in which he addresses what he perceives to be the failed evidentiary and admissibility underpinnings of Exhibit 2, we will not consider this argument. *See State v. Vaughn*, 2005-NMCA-076, ¶ 42, 137 N.M. 674, 114 P.3d 354 (stating that "this Court will not consider an argument that lacks citation to any legal authority in support of that argument").

**{31}**     Defendant additionally argues that he was denied the opportunity to question the officer who performed the forensic scan of his computer regarding the forensic software or the administration of the scan. Defendant asserts that the technique used in the software search to locate the images on Defendant's computer is vital to establishing that Defendant had knowledge that the images were on his computer, and the district court erred in finding knowing possession "without any foundational testimony." Although Defendant acknowledges that he is not alleging a confrontation violation, he maintains that his due process rights were violated as a result of allowing Officer Baum to lay the foundation for the admission of Exhibit 2. We disagree.

**{32}**     In our review of the record we notice that Officer Baum testified that after he located the first nude image on Defendant's computer, he questioned Defendant about whether "there [were] any porn images" on the computer, and Defendant acknowledged that there were. In probation violation hearings, the district court performs two separate roles, fact finding and disposition. *Martinez*, 1989-NMCA-036, ¶ 11. In this context, Officer Baum's testimony bore the capacity to establish that Defendant knew there was prohibited material on his computer. "It is the court's sound judgment that is invoked, and the exercise of that judgment will not be reversed on appeal unless it was mistakenly exercised." *Id.* (internal quotation marks and citation omitted). Given this testimony, we cannot conclude that the district court's decision to revoke Defendant's probation was "clearly against the logic and effect of the facts and circumstances of the case[,]" or that its ruling was "clearly untenable or not justified by reason." *State v. Layne*, 2008-NMCA-103, ¶ 6, 144 N.M. 574, 189 P.3d 707 (internal quotation marks and citation omitted). Accordingly, we affirm.

## CONCLUSION

**{33}**     For the foregoing reasons, we affirm the revocation of Defendant's probation.

**{34}**     **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

11

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**M. MONICA ZAMORA, Judge**