# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  April 27, 2015 

**NO. 33,004**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ROBERT DINAPOLI,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Angela J. Jewell, District Judge Pro Tempore**

Hector H. Balderas, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# OPINION

**WECHSLER, Judge.**

{1}     Defendant Robert Dinapoli, having previously been convicted of criminal sexual penetration, signed a Sex Offender Supervision Behavioral Contract (the sex offender contract) in which he agreed that he would not possess "any sexually oriented or sexually stimulating material." The district court revoked Defendant's probation because Defendant was found to be in possession of three R-rated, theatrically released movies. Defendant argues that he did not have sufficient notice that his possession of such movies would violate the terms of his probation and that the district court erred by revoking his probation without reviewing the movies in their entirety in order to assess the nature of the movies as a whole. We hold that Defendant had sufficient notice as a result of both the sex offender contract and the circumstances of a previous probation violation. We further hold that the district court had sufficient evidence before it without reviewing the movies in their entirety. We therefore affirm the revocation of Defendant's probation. We nevertheless correct the district court's order and commitment to credit Defendant for days of probation he already served.

**BACKGROUND**

{2}    On December 4, 1992, Defendant was indicted for numerous crimes of criminal sexual penetration taking place on June 25, 1990 after he had broken into the home of two women while armed with a firearm. In 1994, Defendant pleaded guilty to four counts of criminal sexual penetration, two counts of kidnapping, and one count of aggravated battery. All the crimes involved the use of a deadly weapon. On January 30, 1992, Defendant was also indicted for attempted criminal sexual penetration, kidnapping, and false imprisonment, among other crimes, involving another woman in an incident that took place on October 3, 1991.

{3}    Defendant was sentenced for the 1991 crimes after a plea and disposition agreement to serve 364 days in custody followed by five years probation. For the 1990 crimes, he was sentenced to serve thirty years imprisonment followed by five years probation. He was additionally ordered to participate in both inpatient and outpatient treatment and sex offender counseling.

{4}    Defendant was released from imprisonment on October 21, 2008 to the Sex Offender Unit at the New Mexico Behavioral Health Institute in Las Vegas, New Mexico. Two days later, Defendant was terminated from the program. Defendant's probation officer at that time reported that Defendant "informed staff members that treatment was of no value to him and [that he] wished to be returned to prison where

2

he did not have to put up with anyone asking questions about his past behavior." The probation officer reported that Defendant told him "I don't belong out here, I raped two women and I need to go back to prison. I have food and shelter over there and [j]ust can't make it out here, I need to go back to prison." The district court revoked Defendant's probation and re-committed him to serve a term of six years imprisonment to be followed by five years probation.

{5}     After his subsequent release from prison, the district court allowed Defendant to live at his mother's house because he suffers from a degenerative neurological disorder. Defendant signed the sex offender contract on December 2, 2011. Rosalind Hankins, Defendant's probation officer, reported that Defendant violated the conditions of his probation and was arrested on February 29, 2012, charging that Defendant (1) did not comply with Section 6(D) of the sex offender contract that prohibited Defendant from accessing electronic devices for sexually stimulating material, pornography, adult websites, and social networking sites; and (2) did not attend the Sex Offender Treatment Program because he was asked to leave for being disruptive (the February violation). As to the first charge, Ms. Hankins reported that Defendant stated that the websites depicted rape victims and rapists and that he "wanted to learn more about what kind of rapist he was." The State filed a motion to revoke probation, and the district court held a probation violation hearing on April

5, 2012. The district court reinstated Defendant's probation with the additional condition that Defendant not access the internet with his cell phone.

{6} On July 30, 2012, Ms. Hankins and another probation officer visited Defendant's residence on a routine probation call. While there, Ms. Hankins found three DVDs in Defendant's bedroom that she characterized in her probation violation report attached to the State's motion to revoke Defendant's probation as "extremely violent and sexually graphic in nature, and portray women being raped." The State again filed a motion to revoke probation. After a probation violation hearing held on September 19, 2012 (September hearing), the district court found that Defendant violated his probation by possessing sexually explicit materials in violation of Section 6(A) of the sex offender contract. The district court revoked Defendant's probation and committed Defendant to the Department of Corrections for a term of five years to be followed by supervised probation for a new term of five years.

**NOTICE**

{7} Defendant first argues that the district court improperly revoked his probation because he did not have sufficient notice that his possession of the movies would violate the terms of his probation. Specifically, Defendant contends that neither the sex offender contract nor the February violation provided him notice that his possession of "popular, mainstream, R-rated movies" would be a violation of the

4

terms of his probation. Notice is an issue to the extent it bears upon whether it was reasonable for Defendant to have believed that he was not violating the terms of his probation. *See State v. Martinez*, 1989-NMCA-036, ¶ 4, 108 N.M. 604, 775 P.2d 1321 ("The proof necessary [to support the revocation of probation] is that which inclines a reasonable and impartial mind to the belief that a defendant has violated the terms of probation.").

{8}     We review the district court's revocation of probation under an abuse of discretion standard. *Id.* ¶ 5. In exercising its discretion, the court may consider that the purpose of probation is the rehabilitation of a defendant. *State v. Lopez*, 2007-NMSC-011, ¶ 7, 141 N.M. 293, 154 P.3d 668. A court has the authority to revoke probation for a probation violation because rehabilitation is not occurring. *Id.* ¶ 8.

**Evidence Before the District Court**

{9}     The DVDs consisted of three movies: (1) *I Spit On Your Grave* (2010); (2) *The Girl With the Dragon Tattoo* (2009, Swedish); and (3) *The Girl With the Dragon Tattoo* (2011, American). At the probation revocation hearing, the State played "about twelve scenes" from *I Spit On Your Grave* for the court. The State asked the court to review the box containing the movie, noting that the back cover stated, "A group of local lowlifes subject the star of the movie to a nightmare of degradation, rape, and violence."

{10} The State also played scenes from both versions of *The Girl With the Dragon Tattoo* at the hearing. While the DVDs were playing, Ms. Hankins testified about what was depicted. As to the Swedish version, she noted a scene in which a woman is anally raped, an oral sex scene, and a scene in which "it happens in the office." She described a rape scene in which a woman is handcuffed to a bed, has her pants pulled off, is fully nude from the back, and is being raped. She described the rape scene in the American version as "very similar" and also noted a scene with oral sex. The State drew the court's attention to the warning on the back of the DVD cover, which read, "Rated R for brutal, violent content, including rape and torture, strong sexuality, graphic nudity" and characterized the plot as "a secret history of murder and sexual abuse."

{11} Defendant testified at the September hearing that he watched the movies because of the revenge that the portrayed victims were able to impose upon their rapists. He stated that he did not derive sexual satisfaction from the movies. He assumed that the sex offender contract prohibitions only applied to pornography; he was not "cautioned not to watch any scenes in a mainstream movie." He further testified that he did not believe that the proceedings concerning the February violation indicated that the sex offender contract prohibited possession of more than

pornography because the violation was based on his having a cell phone that could access prohibited sites.

**Notice Under Section 6(A) of the Sex Offender Contract**

{12}     The district court revoked Defendant's probation for violating Section 6(A) of the sex offender contract. That provision reads:

> I will not purchase, possess or subscribe to any sexually oriented or sexually stimulating material. This includes, but is not limited to: Sexual devices, books, magazines, video/audio tapes, pictures, DVDs, CD ROMs, and Internet websites.

{13}     As framed by *Martinez*, 1989-NMCA-036, ¶ 4, we analyze the sufficiency of the notice of this section to ascertain whether it enables a reasonable person to believe that Defendant's possession of the movies would constitute a violation of the sex offender contract. We do not believe that Defendant could have reasonably believed that his possession of the DVDs did not violate Section 6(A).

{14}     Section 6(A) prohibited Defendant from possessing "any sexually oriented or sexually stimulating material." Section 6(A) does not limit the type of material that may be prohibited as sexually oriented or sexually stimulating; it specifies that such material may include DVDs. Although Defendant argues that grammatically the word "sexual" in the listing of types of material included within the prohibition restricts the type of DVD included to a "sexual DVD," we read the word as specifying a particular

7

kind of "device" rather than describing all of the listed items. Indeed, reading "sexual" to pertain to the items other than "devices" would be mere surplusage in that the listed items are merely examples of "material" that must be either "sexually oriented" or "sexually stimulating" to be prohibited. *See Mayfield Smithson Enters. v. Com-Quip, Inc.*, 1995-NMSC-034, ¶ 14, 120 N.M. 9, 896 P.2d 1156 ("In New Mexico it is almost axiomatic that a contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract." (alteration, internal quotation marks, and citation omitted)). Thus, to fall within the prohibition of Section 6(A), a DVD must be either "sexually oriented" or "sexually stimulating."

{**15**}     In addition, for the purposes of our analysis, we need not consider whether the DVDs in question were "sexually stimulating" to Defendant. The standard of whether a reasonable person would consider Defendant's possession to be a violation is an objective one. Defendant's testimony that he was not sexually stimulated is not relevant to this inquiry. We therefore focus our discussion on whether a reasonable person would believe that the material was "sexually oriented."

{**16**}     We have guidance with regard to this terminology in *State v. Green*, 2015-NMCA-007, 341 P.3d 10, *cert. denied*, 2014-NMCERT-012, ___ P.3d ___. In that case, the probation violation report included within its allegations that the defendant

8

had possession of sexual images on his computer that violated a provision of the defendant's sexual offender behavior contract similar to the provision in this case. *Id.* ¶ 21. The defendant argued that the evidence did not support the revocation of his probation because the contract was overly vague in that a reasonable person would not understand that the nude images depicted would be considered pornography or prohibited by the contract. *Id.* The contract in that case also prohibited the defendant from possessing "any sexually oriented or sexually stimulating material[,]" including, but not limited to "[s]exual devices, books, magazines, video/audio tapes, DVDs, CD ROMs, and [i]nternet websites." *Id.* ¶ 23 (alterations in original). In interpreting the contractual prohibition in that case, this Court stated:

> Our Supreme Court has defined the term "sexually explicit exhibition" as a "graphic and unequivocal display or portrayal of nudity or sexual activity." *State v. Myers*, 2009-NMSC-016, ¶ 10, 146 N.M. 128, 207 P.3d 1105. Furthermore, our Legislature defines "sexual conduct" as an "act of masturbation, . . . physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person be a female, breast[.]" NMSA 1978, § 30-37-1(C) (1973). We conclude each of these definitions encompasses that which is "sexually oriented" within the terms of [the d]efendant's sex offender behavior contract.

*Id.* ¶ 25 (alteration and omission in original).

{17}     The DVD covers were enough to raise a reasonable question concerning whether the DVDs contained "sexually oriented" material. The cover to *I Spit On Your Grave* stated that the movie involved "a nightmare of degradation, rape, and

9

violence." The cover to the American version of *The Girl With the Dragon Tattoo* stated that the movie involved "violent content, including rape and torture, strong sexuality, [and] graphic nudity" as well as "sexual abuse." From this language, a reasonable person would be on notice of the sexually oriented material in the DVDs. And, even if the covers were not sufficient notice, the graphic content of *The Girl With the Dragon Tattoo*, as described by Ms. Hankins, would put a reasonable person viewing the DVD on notice that the material was "sexually oriented."

{18}    The fact that the movies were "mainstream movies that anybody can buy at any video store" as Defendant contended below is not of consequence. Under Section 6(A) of the sex offender contract, Defendant agreed that he would not possess any sexually oriented material, including sexually oriented DVDs. Nothing in that provision excludes sexually oriented material of general availability. Section 6(A) is a condition of Defendant's probation, which, by its language, is designed to prevent Defendant from possessing material that may lead to recurring criminal activity or hinder his rehabilitation. With this intent, it is reasonable to believe that, standing alone, the source of any sexually oriented material is not relevant.

**Notice Under Section 6(A) Read in Conjunction with Other Provisions of the Sex Offender Contract**

{19}     Nor do we believe, as Defendant further contends, that, in the context of this case, Section 6(A) is limited to "adult" or "pornographic" material when read in conjunction with other provisions of the sex offender contract. Other provisions of the sex offender contract provide:

> I understand that any computer, camera, computer tablet, cell phone, thumb drive (USB drive), memory or any other electronic device I have access to, including the hard drive and removable drives may be examined for inappropriate content at any time. Inappropriate content includes, but is not limited to: ***Sexually stimulating material, Pornography (adult or child), adult websites, social networking sites, such as, but not limited to Facebook, Myspace and Mocospace, dating websites, and personal ads to include cell phone applications.***

Section 6(D).

> I will not patronize any establishment in which sexually oriented material or entertainment is available. Including, but not limited to: ***adult book/video stores, and topless/nude clubs***.

Section 6(F).

> I understand that I may be asked to provide my telephone, satellite television, or cable bill for examination. Prohibited charges on these bills include: ***calls to adult hotlines, and adult channels***.

Section 6(G).

{20}     Section 6(D) prohibits Defendant from maintaining "inappropriate content" on any electronic device. "Inappropriate content" is not defined other than to state that

it includes, but is not limited to, certain types of material. It clearly includes sexually stimulating material, and it may be assumed that, applying the principle of *ejusdem generis*, the sex offender contract intends to embrace pornography and the other listed items in the same manner as sexually stimulating material. *See State v. Nick R.*, 2009-NMSC-050, ¶ 21, 147 N.M. 182, 218 P.3d 868 (stating that, under the statutory construction principle of *ejusdem generis*, when words with a general meaning follow words with a more specific meaning, "the general words are not construed in their widest extent but are instead construed as applying to persons or things of the same kind or class as those specifically mentioned" (internal quotation marks and citation omitted)); *State v. Strauch*, 2014-NMCA-020, ¶ 13, 317 P.3d 878 (applying the principle of *ejusdem generis* when words of specific meaning follow general words), *rev'd on other grounds*, 2015-NMSC-009, ___ P.3d. ___. While unstated, by virtue of the nature of the provision, we further believe that Section 6(D) intends for sexually oriented material to be included within the scope of "inappropriate content." Indeed, the sex offender contract treats "sexually oriented" and "sexually stimulating" material in a similar fashion.

{21} Defendant points to the statutory construction principle of *ejusdem generis* and argues that, when the provisions of the sex offender contract are considered together, Section 6(A) would be reasonably understood to prohibit only pornographic

12

materials. According to Defendant, all the language describing prohibited materials in Sections 6(D), (F), and (G) "clarify" the terms "sexually stimulating or sexually oriented material" in Section 6(A) to relate to "adult" or pornographic material. We again note, in this regard, that Section 6(A) prohibits possession of "sexually oriented or sexually stimulating materials[,]" and Section 6(D) defines "inappropriate content" to include both "[s]exually stimulating material" and pornography, as well as "adult websites." Sections 6(F) and (G) focus their prohibitions on "adult" activities.

{22}    However, Section 6(D), by defining "inappropriate content" to include both "[s]exually stimulating material" and pornography, does not use the two terms interchangeably. While there certainly may be overlap, if the intent were to equate sexually stimulating material with pornography, there would be no reason to list both items. *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651 ("[W]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions."). We do not believe that it would be reasonable to assume the two terms to be fully inclusive.

**Impact of the February Violation**

{23}    Moreover, to the extent that there is ambiguity, it was reasonably resolved with respect to Defendant because of the additional notice afforded him by the proceeding

13

related to the February violation. That proceeding involved Section 6(D) and the allegations that Defendant accessed websites depicting rapists and rape victims on his cell phone. Defendant agreed not to access the internet using his cell phone.

{24} At the September hearing, Defendant's previous probation officer testified, over defense counsel's relevance objection, regarding the February violation. On cross-examination, Defendant later stated that he had viewed websites on his cell phone that included statements of people who were raped. He acknowledged that he violated his probation because he viewed sexually stimulating material that did not include pornographic pictures. This acknowledgment was inconsistent with Defendant's position that he was unaware that sexually stimulating materials were not limited to pornography. In closing, the prosecutor argued that Defendant was aware that the sex offender contract was not limited to pornography as a result of the February violation. At sentencing, the district court, in finding that Defendant had violated the sex offender contract by possessing the DVDs, stated:

> There had been a prior revocation or motion revoking probation, wherein it was another scene viewed that was pretty similar to the—well, it was a scene viewed that had nuances of the same scenes that were viewed in these other tapes. It's just troubling, when you've been corrected once, that you would do the same thing again.

{25} Defendant argues on appeal that the violation underlying the current proceedings is "completely distinct" from the February violation such that the earlier

14

proceedings were not sufficient to give a "person of ordinary intelligence" notice that possession of the DVDs at issue would violate the sex offender contract. He further argues that the district court misapprehended the substance of the earlier proceedings and erroneously relied upon them. As to the latter argument, we agree with Defendant that the district court may have misstated the facts of the February violation. It was not clear that Defendant viewed any scenes or images on his cell phone. However, we do not consider this discrepancy to be a material one because we do not agree with Defendant that the February violation was "completely distinct" from or unrelated to the current one.

{26} The two violations are related, even though they are not factually the same, because the circumstances of the February violation were sufficient to provide a reasonable person with notice that possession of sexually oriented or sexually stimulating material was forbidden by the sex offender contract even if it were not considered pornographic. The February violation involved Defendant's accessing websites on his cell phone that depicted rape victims and rapists. Regardless of whether the websites included scenic material, the State moved to revoke Defendant's probation for violating Section 6(D) of the sex offender contract. That section, as we have described, prohibits Defendant from accessing sexually stimulating material, pornography, adult websites, and social networking sites that "include cell phone

applications." The State did not assert, and nothing in the record indicates, that the websites involved pornography. Indeed, Defendant testified at the September hearing that the websites pertaining to the February violation did not have pornographic pictures and that there was a probation violation because he was "viewing sexually stimulating material."

{27} A reasonable person would conclude from this information that material need not be pornographic in order to be sexually stimulating. A reasonable person would further conclude that, although the February violation was of Section 6(D), material also would not need to be pornographic in order to be considered sexually stimulating as prohibited by Section 6(A). Because the terms "sexually stimulating" and "sexually oriented" are used interchangeably in Section 6(A), a reasonable person would thus necessarily conclude that material need not be pornographic to be prohibited as "sexually oriented" by Section 6(A). We therefore conclude that the circumstances of the February violation provided notice to Defendant that the DVDs that contained sexually oriented material would be a violation of Section 6(A) even though the material may not be considered pornographic as that term is used in the sex offender contract.

**DEFENDANT'S ADDITIONAL ARGUMENTS CONCERNING THE SEX OFFENDER CONTRACT**

{28} Defendant additionally argues in connection with his notice argument that the prohibitions of the sex offender contract are vague and overly broad. According to Defendant, the sex offender contract is vague and overly broad because it does not provide sufficient notice that the possession of mainstream movies was prohibited and because it therefore gives rise to the risk of arbitrary enforcement by probation officers. However, the sex offender contract couches the prohibitions of Section 6(A) in terms of "sexually oriented or sexually stimulating material." As we discussed in *Green*, the meaning of "sexually oriented" can be gleaned from case law and statute. 2015-NMCA-007, ¶ 25. Moreover, as we have discussed, Defendant had additional notice of the prohibitions of the sex offender contract by virtue of the February violation. We do not consider the sex offender contract to be impermissibly vague such as to have denied Defendant notice. We consider the sex offender contract to be necessarily broad in order to accomplish its rehabilitative purpose. *See Lopez*, 2007-NMSC-011, ¶ 7 (stating the rehabilitative intent of probation).

{29} Defendant further argues that the sex offender contract violates his First Amendment rights. However, conditions of probation are, by their very nature, restrictions on an offender's lifestyle. Probation "is not a matter of right"; it is "an act

of clemency" within the court's discretion. *Id.* (internal quotation marks and citation omitted). Probation conditions are permissible if they serve the best interests of the public and the interest of the offender's rehabilitation. *See id.* ("Probation assumes that the best interests of the public and the offender will be served and also that the offender can be rehabilitated without serving the suspended jail sentence." (internal quotation marks and citation omitted)). "Probation is a criminal sanction, and the district court may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." *State v. Leon*, 2013-NMCA-011, ¶ 27, 292 P.3d 493 (internal quotation marks and citation omitted). By prohibiting Defendant from possessing sexually oriented material, the sex offender contract addresses both the need to deter Defendant from reoffending and the effort to bolster his rehabilitation. Such a prohibition is a permissible restriction of Defendant's First Amendment rights.

**THE DISTRICT COURT'S EVIDENTIARY REVIEW**

{30}    At the probation revocation hearing, the State played scenes from each of the three DVDs for the district court's review, including twelve scenes from *I Spit On Your Grave*. The scenes from both versions of *The Girl With the Dragon Tattoo* were described by Ms. Hankins. The district court did not view other portions of the DVDs.

18

{31} Defendant objected to the district court's viewing only portions of the DVDs, arguing that, unless the movies were viewed in their entirety, the court would not be viewing the complete evidence and the scenes selected by the State would not be within context. On appeal, Defendant argues that the district court abused its discretion and violated his due process rights by failing to view the movies in their entirety. Defendant acknowledges that Rule 11-106 NMRA, pertaining to a court's ability to receive evidence of parts of a writing or recorded statement that, in fairness, should be considered along with other parts of the same writing or recorded statement received in evidence, does not apply to a probation revocation hearing. *See* Rule 11-106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."); Rule 11-1101(D)(3)(d) NMRA (stating that the rules of evidence do not apply to proceedings to revoke probation). Indeed, the district court offered to view additional parts of the DVDs identified by Defendant as demonstrating the absence of a probation violation.

{32} "We review the district court's evidentiary rulings for an abuse of discretion." *Green*, 2015-NMCA-007, ¶ 27 (internal quotation marks and citation omitted). To the extent that Defendant contends that the district court violated his due process rights,

he must show prejudice. *State v. Neal*, 2007-NMCA-086, ¶ 42, 142 N.M. 487, 167 P.3d 935.

{33} Defendant argues that, although the DVDs "contain isolated scenes depicting sex[,]" the district court was required to view the DVDs in their entirety in order to determine if they "overall" constituted "sexually oriented" material. He draws a parallel to the constitutional test for obscenity, asserting that the test for "sexually oriented" is similarly dependent on a review of the material "taken as a whole." *Miller v. California*, 413 U.S. 15, 24 (1973) (setting forth the "basic guidelines" for the factual determination that material is obscene as "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." (internal quotation marks and citation omitted)). We do not agree.

{34} The purpose of the test for obscenity is to determine whether speech is not protected by the First Amendment of the United States Constitution because it is obscene. *See id.* at 23 ("This much has been categorically settled by the [United States Supreme] Court, that obscene material is unprotected by the First Amendment."). The

20

issue before us in this case, however, is not a matter of protected speech or First Amendment jurisprudence. It does not matter whether the material is protected by the First Amendment. Rather, the issue is whether Defendant violated the terms of his probation by possessing sexually oriented material. As we have discussed, the purposes of probation are to both prevent an offender from engaging in additional criminal activity and to rehabilitate the offender. The restrictions of the sex offender contract further these purposes by limiting Defendant's access to materials that may reasonably lead to susceptibility of other criminal acts or impede rehabilitation. *See State v. Garcia*, 2005-NMCA-065, ¶ 11, 137 N.M. 583, 113 P.3d 406 ("Conditions of probation are reasonably related to rehabilitation if they are relevant to the offense for which probation was granted. The court has broad discretion to effect rehabilitation and may impose conditions designed to protect the public against the commission of other offenses during the term, and which have as their objective the deterrence of future misconduct." (internal quotation marks and citations omitted)).

{35}    For the same reasons, it does not matter whether other portions of the DVDs did not contain sexually oriented material or that the DVDs, taken as a whole, would not be considered "sexually oriented." The issue is whether the DVDs contained sexually oriented material that would undermine the purposes of Defendant's probation. The district court did not abuse its discretion or violate Defendant's due

21

process rights in concluding that the DVDs met that standard based on the evidence before it.

**CREDIT FOR TIME ON PROBATION**

{36} In revoking Defendant's probation, the district court entered its October 2, 2012 order and commitment to the Department of Corrections, ordering Defendant's imprisonment for a period of five years followed by a new term of probation for five years. Defendant claims on appeal that the district court erred by neglecting to credit Defendant with 298 days that Defendant served on probation. The State does not oppose a credit but states that the proper credit is 299 days rather than 298.

{37} We agree that Defendant is entitled to credit for the time he served on probation. *See State v. Baca*, 2005-NMCA-001, ¶ 21, 136 N.M. 667, 104 P.3d 533 ("A probationer whose sentence has been suspended is entitled to credit against his or her sentence for the time served on probation."). We thus remand to the district court to modify its order and commitment to the Department of Corrections to recalculate Defendant's remaining sentence. We suggest that, when doing the recalculation, the district court expressly set out, as done in its January 6, 2009 order and commitment to the Department of Corrections, (1) the term remaining in Defendant's sentence, (2) the term of the sentence to be suspended, (3) the term of imprisonment, and (4) the time for which Defendant is given credit.

**CONCLUSION**

{38}     We affirm the district court's revocation of Defendant's probation and remand to the district court to modify its sentence to provide credit for time served on probation.

{39}     **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**M. MONICA ZAMORA, Judge**