This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                              **No. 34,502**

**CHRISTOPHER HERNANDEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Michael E. Martinez, Pro Tem District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John J. Woykovsky, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}    Defendant appeals from the district court's order revoking his probation on the grounds that Defendant cut off his GPS ankle bracelet and failed to stay at his approved residence. Defendant challenges the sufficiency of the evidence to support these alleged violations of his probation agreement. We hold that sufficient evidence was presented to support the revocation of Defendant's probation. We therefore affirm.

**DISCUSSION**

{2}    Because the parties are familiar with the facts and procedural history of this case, we reserve discussion of the pertinent facts for our analysis.

{3}    Proof of a probation violation "must be established with a reasonable certainty, such that a reasonable and impartial mind would believe that the defendant violated the terms of probation." *State v. Green*, 2015-NMCA-007, ¶ 22, 341 P.3d 10. "The burden of proving a violation with reasonable certainty lies with the [s]tate." *Id.* "Once the state offers proof of a breach of a material condition of probation, the defendant must come forward with evidence to excuse non-compliance." *State v. Leon*, 2013-NMCA-011, ¶ 36, 292 P.3d 493 (internal quotation marks and citation omitted). If the defendant establishes that the violation was not willful or otherwise resulted from circumstances beyond his or her control or fault, and the district court finds consistently with the defendant's excuse, then probation should not be revoked. *See*

*State v. Martinez*, 1989-NMCA-036, ¶ 8, 108 N.M. 604, 775 P.2d 1321. If the defendant does not carry this burden, then the district court is within its discretion to revoke probation. *See id.*

**{4}** "We review [the] district court's decision to revoke probation under an abuse of discretion standard. To establish an abuse of discretion, it must appear the district court acted unfairly or arbitrarily, or committed manifest error." *Green*, 2015-NMCA-007, ¶ 22 (alteration, internal quotation marks, and citation omitted). On appeal, we "view[] the evidence in a light most favorable to the [s]tate and indulg[e] all reasonable inferences in favor of the [district] court's judgment." *State v. Erickson K.*, 2002-NMCA-058, ¶ 21, 132 N.M. 258, 46 P.3d 1258.

**{5}** At the probation revocation hearing, the State presented evidence that on April 19, 2014, Defendant was issued a GPS ankle bracelet under the terms of a Community Custody Program (CCP), under which he remained on house arrest monitored by the GPS bracelet. The rules of CCP required Defendant to be responsible for all the GPS and other house arrest equipment; check in by phone twice a day, in the morning and afternoon; submit to two urinalyses (UAs) a week; and report when called or when alerted by the GPS ankle bracelet to do so. Officer Sanchez, the CCP tracker assigned to Defendant, testified that he made sure Defendant understood the rules, Defendant's responsibilities, and how to use all the GPS equipment.

**{6}** Michael Abeyta, an employee with the Bernalillo County Detention Center, testified that on April 19, 2014, he was assigned to monitor the GPS ankle bracelet by computer and received a page on the computer showing that Defendant had cut his bracelet. More specifically, the page indicated that Defendant had a "strap tamper," which means that the bracelet was on and powered and that someone broke the connection and cut off the bracelet. Mr. Abeyta paged Defendant's bracelet, which sent an audible beep and a voice alert instructing Defendant to call his officer and report in. Defendant did not respond to the alert on the bracelet and did not call, as he was alerted and required to do. The computer showed that the GPS bracelet was cut and remained at the address listed in Defendant's file, so Mr. Abeyta traveled to that address.

**{7}** When Mr. Abeyta arrived, he knocked on the door of the residence for about five to ten minutes, but no one answered the door or acknowledged his presence. The lights were off, it was dark inside, the door was locked, and it appeared as if no one was home. Mr. Abeyta testified that it was a single-story home with no other attachments or residences on the property. Mr. Abeyta could not see the bracelet inside the home. While Mr. Abeyta was at the residence, he received a call from his sergeant explaining that he had gotten a call from the Albuquerque Police Department (APD), explaining that Defendant's girlfriend reported a domestic violence altercation

4

and stated that Defendant had left the home and cut off his bracelet. Defendant never returned the bracelet to CCP; CCP eventually retrieved all the other equipment from Defendant except for the bracelet. Officer Sanchez completed an escape report for Defendant and filed it with the court.

**{8}** On appeal, Defendant contends that the evidence was too speculative to conclude that Defendant had cut off his bracelet. Defendant contends that the absence of direct evidence that Defendant cut off his bracelet combined with his testimony at the sentencing phase—that he lived in the back of the home and did not hear Mr. Abeyta knocking—provides greater support for the conclusion that the ankle bracelet had simply malfunctioned. We disagree. On appeal, we indulge in reasonable inferences that support the judgment of the fact-finder and disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829; *see also State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." (internal quotation marks and citation omitted)). We will not invade the province of the fact-finder by second-guessing its decision concerning the credibility of witnesses, by reweighing the evidence, or by substituting our judgment for that of the fact-finder. *See State v. Garcia*, 2016-NMSC-034, ¶ 15, 384 P.3d 1076. Therefore, to the extent

that Defendant's testimony at the sentencing phase is argued to be contrary evidence, we may disregard it and disregard the inference that his ankle bracelet was not functioning properly. Also, direct evidence is not required to establish a violation. *See State v. Trevor M.*, 2015-NMCA-009, ¶ 14, 341 P.3d 25 (stating that the test for sufficiency of the evidence to prove a juvenile probation violation is "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction" (internal quotation marks and citation omitted)). **{9}** We believe it is reasonable to infer that Defendant cut the ankle bracelet based on the complete absence of the ankle bracelet, particularly from his ankle, after the "strap tamper" alert in combination with the evidence that the computer reported a break in the connection while it was present at the residence, and that knowing the rules and equipment, Defendant failed to report in or answer the door. We hold that the State satisfied its burden of presenting evidence from which "a reasonable and impartial mind would be inclined to conclude that the defendant has violated the terms of probation." *Leon*, 2013-NMCA-011, ¶ 36. Defendant's assertion that he did not hear Mr. Abeyta knocking was a matter of credibility that was rejected by the district court. Thus, Defendant did not carry his burden of establishing an excuse for his noncompliance,

and the district court was within its discretion to revoke Defendant's probation. *See Martinez*, 1989-NMA-036, ¶ 8.

{10}     Defendant also contends that the evidence was insufficient to establish that Defendant failed to stay at his approved residence, because the State's proof of this violation constituted hearsay evidence. *See State v. Vigil*, 1982-NMCA-058, ¶ 13, 97 N.M. 749, 643 P.2d 618 (explaining that where the sufficiency of the evidence supporting the violation is challenged based on the use of hearsay to prove the violation, our review determines whether the evidence was "sufficient to verify that [the] defendant violated conditions of probation"). We need not address Defendant's challenge to the evidence supporting the second violation, because "if there is sufficient evidence to support just one violation, we will find the district court's order was proper." *Leon*, 2013-NMCA-011, ¶ 37. Nevertheless, we take this opportunity to point out that Defendant's challenge to the sufficiency of the evidence, based on the argument that the district court relied on hearsay evidence in revoking his probation for *both alleged violations*, was waived.

{11}     Mr. Abeyta's testimony about the call he received from APD regarding the domestic violence report, Defendant's absence, and his ankle bracelet was far from the sole evidence presented by the State proving that Defendant cut off his bracelet and did not factor into our assessment that the evidence was sufficient to revoke

7

Defendant's probation. The evidence was sufficient to prove the probation violation without any reliance on the hearsay evidence.

**{12}** Because there was sufficient evidence of one material breach of Defendant's probation agreement and because Defendant waived his specific challenges to the second probation violation, we do not address whether revocation was proper for the second alleged violation.

**CONCLUSION**

**{13}** For the foregoing reasons, we affirm the district court's order revoking Defendant's probation.

**{14}** **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**J. MILES HANISEE, Judge**